MORGAN et al. v. DOD.

<div style="float:right">3  551<br>14  135</div>

1. Where one delivers chattels to another as indemnity for suretyship, the law regards such delivery as a pledge merely., Nor does it alter the case in a court of equity that the property is transferred by an absolute bill of sale, nor even if the contract stipulates that the pledge shall be irredeemable.

2. A pledgee, who was surety on a promissory note, transferred the property to the payee for the purpose of discharging the debt: *Held,* that the transfer did not change the status of the property, and that the pledgor had the right to redeem even after maturity.

3. A pledgee can sell only, and for the purpose of applying the proceeds to the extinguishment of the debt. Such sale must be at public auction after due notice to the pledgor or owner.

4. Where a party acts upon the misapprehension that he has no title to property, a court of equity will relieve him from the legal effect of instruments which surrender such unsuspected title.

*Error to Probate Court of Arapahoe County.*

SUIT in equity. The defendant in error, Dod, borrowed from Morgan, one of the plaintiffs in error, two hundred and fifty dollars, giving his note therefor, payable in thirty days, Babcock, the other plaintiff in error, signing the note as surety. To indemnify Babcock, Dod gave him the possession of a mare and harness, with a bill of sale of the property. There was also delivered to Babcock by one Millspaugh, who also signed the note as surety, a mare and colt, with a bill of sale and two promissory notes payable to Millspaugh, for one hundred and one hundred and fifty dollars respectively, and which notes were duly assigned to Babcock. This property of both Dod and Millspaugh was all conveyed and delivered to Babcock to induce him to sign the note and to indemnify him against loss therefor, since Morgan had refused to loan the money on this property itself as security, but had accepted Babcock's name. The note fell due on Thursday of the week, but the three days' grace allowed made it payable upon Saturday, since the third day of grace fell on Sunday, Morgan insisted upon payment of the note by three o'clock P. M. on

Saturday, and the note not being paid at that time, he demanded payment of Babcock, who, claiming that the property was then forfeited to himself, delivered it all over to Morgan, who accepted it in satisfaction of the debt and delivered up the note to Babcock. This occurred about four o'clock. After Babcock had turned the property over to Morgan, Millspaugh complained to Dod of his own loss and the two went to see Babcock to learn if there was any way to get back Millspaugh's property. This talk was renewed on Sunday, when Dod requested Babcock to see Morgan and make terms for getting back Millspaugh's property, stating that he would lose or give his own mare and harness to save that of his friend Millspaugh. Babcock accordingly saw Morgan, who, on the next day, Monday, agreed to give up Millspaugh's mare and colt and the two notes upon payment of the two hundred and fifty dollars. Babcock agreed to this which was afterward assented to by Dod, and the money was paid to Morgan. About a week afterward Dod demanded his mare and harness of Morgan and upon refusal to deliver brought an action at law, and failing in this, filed his bill against both Morgan and Babcock, charging collusion to defraud the complainant, etc. Pending the suit, the mare, while still in the possession of Morgan, became injured and died. At the final hearing upon the facts, the court rendered a decree against Morgan for two hundred and fifty dollars, as the proved value of the mare and harness, and awarded costs against Morgan and Babcock jointly.

Messrs. Benedict & Phelps, for plaintiff in error.

Messrs. Symes & Decker, for defendant in error.

Stone, J. Upon the facts in this case, and under the general assignment of error, that the complainant was not entitled to any relief whatever, the first question presented is, what was the nature of the conveyance of the goods of the defendant in error to the plaintiff Babcock? The con-

veyance was by a bill of sale, absolute in terms, and accompanied by actual delivery of the property. The admitted purpose of the conveyance was to indemnify Babcock, as security upon defendant's note to Morgan. This purpose determined the character of the transaction as a pledging; where one delivers a chattel to another as security for a debt or as indemnity for suretyship therein, the law regards such delivery of the property as a pledge merely. Story on Bailments, §§ 286–300. Nor does it alter the case in a court of equity that the property or chose in action is transferred to the creditor or surety by an unconditional bill of sale or assignment, nor even if the contract had stipulated that the pledge should be irredeemable. Id., § 345. As limited to cases in equity, this doctrine is well settled. *Newton et al.* v. *Fay*, 10 Allen, 510.

The defendant then had a right to redeem the property pledged upon payment of the debt, either upon maturity of the note or even after default. Story on Bailments, §§ 318, 345, 346 and 348.

And he had the whole of the day upon which the note fell due in which to pay. Before default on that day, Babcock transferred the property to Morgan in discharge of the debt. This he had no right to do ; he could only transfer his interest as pledgee. The transfer did not change the status of the property. Morgan, as the common creditor of both Dod and Babcock, could only take and hold it as second pledgee until the debt was paid. Story on Bailments, §§ 324, 327 and 350.

Neither Babcock nor Morgan had the right to sell the pledge except for the purpose of applying the proceeds of the sale in discharge of the debt; and the sale must have been at public auction and upon due notice to the pledgor or owner. Nor could the pledgee become a purchaser even at such public sale. *Middlesex Bank* v. *Minot*, 4 Metc. 325 ; Story on Bailments, § 310.

Morgan could hold the property merely as collateral, and upon payment of the note, which was done two days

after maturity, Dod was entitled to a return of his property. But here it is contended by counsel for plaintiffs that the agreement of Dod to pay the amount of the note after default and to give his horse and harness, part of the pledged property, in consideration that Morgan would restore the other part to Millspaugh, the real owner, the consummation being without fraud, and the subsequent ratification of that agreement constituted a new and independent contract which was valid and binding upon him.

We have examined this proposition with considerable care, and are convinced of its unsoundness in that this new contract, viewing it as such, lacks the essential element of adequate consideration. It is proper to observe here that it is an admitted fact in the evidence, that all the parties to the original transaction, Morgan, Babcock, Millspaugh and Dod, really believed that the pledged property upon default in payment of the note at maturity, became forfeited to Babcock, with the right to treat it as his own absolutely, and that by the transfer to Morgan the latter became in like manner the absolute owner. This belief was founded upon the conclusions of the parties as to the effect of the unconditional character of the bill of sale, and while it gives a color of plausibility to the position assumed by counsel for plaintiffs, that it is a sufficient consideration to support a contract for the compromise of a doubtful claim, or to end or avoid litigation, yet it must be borne in mind that here was neither compromise of any claim, doubtful or otherwise, nor was there litigation pending, or impending, which actuated Dod in the payment of the two hundred and fifty dollars. The avowed purpose was to get back a part of the pledge, upon payment of the original debt. The sole consideration was that Morgan should do the very thing which in law he was bound to do.

This brings us to the question whether a mistake of the law will avail to discharge an obligation assumed thereunder.

The maxim *ignorantia legis neminem excusat*, when ap-

plied to civil contracts, has undergone much discussion, and many exceptions have been made by the courts. And while no rule of exception of general applicability has been formulated, there is, nevertheless, ample authority, based upon sound reasons, to support such exceptions in given cases. This whole subject is fully discussed by Mr. Story in his work upon Equity Jurisprudence, and in section 121 he says : "It has been laid down as unquestionable doctrine, that if a party, acting in ignorance of a plain and settled principle of law, is induced to give up a portion of his indisputable property to another, a court of equity will relieve him from the effect of his mistake." And in the next section he adds : "Indeed, where a party acts upon the misapprehension that he has no title at all in the property, it seems to involve, in some measure, a mistake of fact that is, of the fact of ownership, arising from a mistake of law. A party can hardly be said to intend to part with a right or title of whose existence he is wholly ignorant ; and if he does not so intend, a court of equity will, in ordinary cases, relieve him from the legal effect of instruments which surrender such unsuspected right or title." In section 138 c, the same learned author says : "And where the result of denying relief will be to give the other party an unconscionable advantage, and the fact of such misapprehension is admitted or proved to the entire satisfaction of the court, it would be strange if it were not a sufficient ground for equitable interference. The denial of relief in such cases would seem to be at variance with the long-established doctrines of courts of equity, and a reproach to the law itself."

The same doctrine is recognized in Bispham's Principles of Equity, § 187, and in Kerr on Fraud and Mistake (Bump's ed.), page 398. Nor is the application of this doctrine confined altogether to equity, it being distinctly recognized under the head of inadequacy of consideration by the general law writers. 1 Parsons on Contracts, 437 ; Chitty on Contracts, 46 ; Addison on Contracts, § 315.

The relinquishment by Dod of his property to Morgan was clearly without consideration. And other elements of the bargain render it unconscionable. Dod, when he made the note for two hundred and fifty dollars, received but two hundred and twenty-five, Morgan retaining twenty-five dollars as interest for thirty days, which was at the rate of about eleven per cent per month. Upon payment of the full amount of the note, the rights of no third party had intervened to prevent the parties being placed in *statu quo* by the decree, yet while Morgan had received all he was entitled to by the original contract, he still held of the pledged property a portion equal in value to the amount of the debt.

We are satisfied that the facts warranted the decree, and since Babcock was not without fault in transferring the property to Morgan at the time he did, we think the equity discretion of the court in decreeing costs against him jointly with Morgan was not erroneously exercised.

The questions raised upon the pleadings we do not consider of sufficient importance to call for any decision other than that we think the bill, though inartificially drawn, sets forth facts sufficiently to entitle the complainant to the relief prayed for, and hence the demurrer was properly overruled. As we can perceive no error in the record, the decree of the court below must be affirmed.

*Affirmed.*