BUTLER ET AL. v. LEWIS C. ROCKWELL, SURVIVING PLAINTIFF, AND GAGE ET AL., EX'RS, ETC.

1. ASSIGNMENT OF CONTRACTS — A STIPULATION AGAINST THE ASSIGNMENT OF A CONTRACT NOT VIOLATED BY ITS ASSIGNMENT AS COLLATERAL SECURITY.— A provision in a contract for the sale of land that it should not be " assignable or negotiable," and that the purchase money should be payable to the vendor, and " only to him, and none other," is not violated by the vendor assigning the contract as collateral security, as the only effect of such provision was to prevent the title to the chose in action from passing to another so as to preclude defendants from asserting any equity or defense that might arise between the original parties.

2. WHO ARE PROPER PARTIES TO AN ACTION BROUGHT TO ENFORCE SUCH A CONTRACT.— (1) The assignee has such an interest in the contract as makes him a proper party to an action to enforce it. (2) The vendor, after such assignment, still retains such an interest in the contract as makes him a proper party to an action for its enforcement. (3) After the death of the vendor, pending such litigation, his executors have the right to be substituted as parties, and such right is not extinguished by the act of the assignee in asking to be made sole plaintiff, and the order of the court in making him such; nor does such order work a discontinuance as to the executors, though made with their full knowledge. Neither does the fact that, by making the executors parties to the action, defendants were rendered incompetent to testify as witnesses in their own behalf, affect the right of the executors to become parties.

2. DEFENSE OF MISREPRESENTATIONS IN SALE OF PROPERTY — ES-
TOPPEL BY CONDUCT — RATIFICATION OF SALE. — Where purchas-
ers of mining property enter into possession, and, after finding
that they have been deceived by misrepresentations of the seller,
fail to either rescind the contract of purchase or affirm it, and
bring an action for the deceit, but continue to exercise acts of own-
ership, they are estopped from setting up the misrepresentations
as a defense to an action to enforce the contract.

## Appeal from District Court of Lake County.

THE complaint upon which the cause was tried was
the original complaint, to which a general demurrer was
filed, defendants, Hugh Butler and Charles W. Wright,
alleging that the complaint did not state facts sufficient
to constitute a cause of action. The demurrer was sus-
tained. The case was brought to this court on error,
where the judgment of the court below was reversed,
and the cause remanded for further proceedings. *Linn
v. Butler*, 8 Colo. 355.

The portions of the complaint necessary to an under-
standing of the case are as follows:

"(1) That on the 24th day of May, A. D. 1879, the
plaintiff, William P. Linn, was the owner of, and in
possession of, an equal undivided one-fourth ($\frac{1}{4}$) inter-
est in and to the American mine, lode, ledge, or deposit,
situated in California mining district, Lake county,
Colorado.   *   *   *

"(2) That upon the day and year last aforesaid said
Linn sold his right, title and interest in and to said
American mine to the defendants for the sum of five
thousand seven hundred and fifty dollars ($5,750), which
sale was evidenced by the following agreement in writ-
ing, in words and figures following, and is made a part
of the complaint, to wit: 'This agreement, in duplicate,
made and entered into this 24th day of May, A. D. 1879,
by and between W. P. Linn, party of the first part, and
Hugh Butler and C. W. Wright, parties of the second
part. Whereas, on the day of the date hereof said second

parties purchased of and from said Linn his right and title in and to the American mine for the sum of five thousand seven hundred and fifty dollars ($5,750), payable in instalments, that is to say, two hundred and fifty dollars ($250) which has already been paid, receipt whereof is hereby confessed; two hundred and fifty dollars ($250) in thirty (30) days next after the date hereof; two hundred and fifty dollars ($250) in sixty days next after the date hereof; and the remaining five thousand dollars ($5,000) out of the net proceeds of said mine, as hereinafter specified. Whereas, in pursuance of said agreement, said Linn hath on this day, in due form, conveyed unto said second parties said interest in said mine: Now, therefore, this agreement witnesseth, that for and in consideration of the premises it is mutually agreed by and between said parties that this agreement shall not be assignable or negotiable, and that the sums of money herein agreed to be paid shall be due and payable to the said Linn, and only to him, and to none other. And it is further agreed on the part of said second parties that they will at the end of thirty (30) days next after the date hereof pay unto said Linn said sum of two hundred and fifty dollars ($250), and in thirty (30) days next thereafter a like sum, and that they will also pay unto said Linn the remaining instalment of five thousand dollars ($5,000), it being well understood, however, that said payment of five thousand dollars ($5,000) shall only be due and payable upon the terms and conditions herein, that is to say, that said latter sum shall be due and payable only out of the net proceeds received from the sale of ore taken from the said American mine by said second parties, such net proceeds to be the net proceeds aforesaid of the undivided one-fourth interest of said mine, that being the interest conveyed by said Linn to said second parties. And it is hereby further agreed and fully understood that the net proceeds above specified shall be construed only to mean the money received by said second

parties from the sale of ores mined and taken from said mine by them on account of said one-fourth interest, and left remaining in hand after paying all expenses of such mining, as well, also, all moneys advanced by said second parties, or paid out by them, for and on account of said undivided one-fourth interest, including the seven hundred and fifty dollars ($750) paid on account of the purchase of said one-fourth interest; and, in case of sale by said second parties of said interest, then, and in that event, said five thousand dollars ($5,000) shall at once become due and payable. In witness whereof said parties have hereunto set their hand on this, the day and year first hereinabove written. HUGH BUTLER. C. W. WRIGHT. WM. P. LINN.'

"(3) And afterwards, and on the 5th day of April last past, said Linn, for a good and valuable consideration, assigned in writing, to Charles F. Burrell, his right, title and interest in and to the foregoing agreement, as security for the loan of twenty-seven hundred dollars ($2,700) before then made by said Linn from said Burrell, which assignment was made with the knowledge and consent of said defendants. And afterwards, and on the 29th day of October last past, said Charles F. Burrell, for a good and valuable consideration, assigned and set over in writing all his right, title and interest in and to said contract to Lewis C. Rockwell, who now holds said contract as collateral security for money theretofore loaned by him to said William P. Linn."

On the 5th of December, 1885, the defendants moved the court to dismiss the cause for the reason, "because it appears from the suggestion of the plaintiff of record in this cause that William P. Linn, the former co-plaintiff of said Rockwell, has, since the institution of the suit, departed this life, and because the action does not accrue to or survive in the said plaintiff Lewis C. Rockwell," which motion was argued, and on March 12, 1886, was overruled by the court. On the same date, defend-

ants filed a demurrer to the complaint, which was likewise overruled. On the 14th of April following they filed their answer to the complaint. On April 30th the plaintiff, L. C. Rockwell, filed a motion that David A. Gage and Nathan S. Hurd, executors of Linn, deceased, be made co-plaintiffs with him in the case, assigning that the reasons or grounds of said motion were: "*First,* because defendants, by motion and in the answer, insist that plaintiff is not the real party in interest in this case; *second,* because defendants insist the contract sued on was not assignable by Linn, and hence L. C. Rockwell has no right to receive the money due thereon." Which motion was supported by the affidavit of L. C. Rockwell, and was argued by counsel, and taken under advisement by the court. On the same day plaintiff filed a demurrer to the answer of defendants. On the 25th of June Nathan S. Hurd filed a petition asking that David A. Gage and himself, executors, be made co-plaintiffs with Rockwell. On the 23d of November following, by consent of counsel, an order was made that counsel, respectively, submit briefs in regard to the making of the executors co-plaintiffs on or before December 15th. On January 10, 1887, an order was entered making the executors parties, to which defendants excepted; and they were required by the court to prepare and tender a bill of exceptions within sixty days.

In the first paragraph of the answer, defendants admit the making of the contract as alleged in the complaint. The second paragraph is as follows: "They deny that said contract was assigned to the said Charles F. Burrell with the knowledge and consent of said defendants, and they deny that they ever assented to the assignment of said contract either to the said Burrell or to the said Rockwell." It is also averred that at some time thereafter, which date is not given, Moffatt and others began to sink a shaft on a small strip of unoccupied land near the line of the American claim, and discovered mineral

in such shaft before any was discovered in the American
mine, and that the vein or ledge found by Moffatt and
others was the same as that alleged by Linn to have
been found in the American claim previous to the sale;
that defendants immediately informed Linn of the find-
ing of the ore by Moffatt and others, and of the fact that
the shaft of the American mine had not been sunk to
mineral, and he again asserted that the ore had been
found in the American mine before the other shaft had
been commenced; that after having found the mineral or
ore in the shaft, and fully complying with the law, Mof-
fatt and others made application for a patent from the
United States government to the ground under the name
of "The Little Sliver," and that the application so made
embraced a large part of the ground claimed as the Amer-
ican claim; that defendants, by the advice and at the re-
quest of Linn, joined the other owners of the American
claim, and filed an adverse claim in the United States
land-office against the application of Moffatt and others
for a patent to the Little Sliver mine, and, within the
time prescribed by law, brought suit in the district court
for Lake county in support of said adverse claim; that, in
preparing for the trial of the case, defendants learned
that the representations made by Linn, that mineral in
place had been found in the shaft on the American mine,
were false; and that mineral in place had been first found
on the Little Sliver claim, and that the location of the
American mine was invalid.

In the ninth paragraph defendants aver, in effect, that
they stated all the facts to Linn, and that he advised
defendants to make a compromise with the claimants of
the Little Sliver lode, and stated to and agreed with de-
fendants that any compromise that they might make
would be satisfactory to him, and that he would change
and modify the existing contract so as to relieve the de-
fendants from its expressed terms.    And in the tenth
paragraph it is averred that, after making the compro-

mise and consolidation of the two conflicting claims, defendants immediately and fully informed Linn of the said settlement and transaction, and that he assented to and ratified the same, and that it was agreed that the contract existing should be so modified that the interest of defendants in the consolidated property should be substituted for the payment of the money in place of the property sold by Linn to defendants.

The fourteenth and part of the fifteenth paragraphs of the answer are as follows: "Said defendants further aver that it was stipulated by and between the said Linn and these defendants in said original contract, as well as in said supplemental contract, assenting to the settlement, adjustment and compromise as aforesaid, that all the rights, benefits and privileges of the said Linn, and the right to demand and receive any and all moneys that might come to him under said contract, should not be assignable, and that the same should be payable to the said Linn only, and that the same was a joint, and not a several, contract on the part of these defendants; and they aver that they have never agreed or consented to any assignment of said contract, or any part thereof, or any interest therein, either to the said Burrell or to the said Rockwell; and they deny that the said Rockwell is now the owner of said contract, or any part thereof, or any interest therein; and they deny his right to maintain this suit against them. (15) And defendants further aver, upon information and belief, that the supposed assignment of said contract to said plaintiff was only for the purpose of securing the payment to said Rockwell of certain debts and claims held by said Rockwell against said Linn; and they further aver, upon information and belief, that the said debts and claims have been fully paid and satisfied." * * * In the seventeenth paragraph, it is in substance averred that the plaintiff Linn died pending the decision of the writ of error in this court; that no application was made by the executors to become

parties to the same; that, after the cause was remanded, Rockwell, with the knowledge and consent of the executors, applied to be and was made sole plaintiff; and that for those reasons the suit was discontinued as to them, and that they had no right to prosecute and maintain this suit against the defendants.

Plaintiffs replied to the answer at great length, traversing and denying all the material averments in the answer. Trial was had in the latter part of December, 1887, resulting in a judgment in favor of plaintiffs for the sum of $9,008.33.

Messrs. HUGH BUTLER and T. D. W. YONLEY, for appellants.

Messrs. L. C. ROCKWELL and CLINT. REED, for appellees.

REED, C. There are in this case forty-three errors assigned upon the record; but a large part of them, if not the majority, arise out of, and are ancillary to, one important question, viz., who were the proper parties, or who was the proper party, to prosecute the suit?

In instituting the suit, William P. Linn was made a plaintiff with L. C. Rockwell, and so remained, without a challenge or objection, so far as is disclosed by the record of the proceedings had in the district court in the first instance. It is true that the only adjudication in that court was upon a general demurrer to the complaint; but, under our code of practice, the objection that the plaintiff had no legal capacity to sue, or that there was a defect or misjoinder of parties plaintiff or defendant, could have been made and determined upon demurrer. Code, § 55, p. 18. This was not done. The question in regard to Linn's being a proper party does not appear to have been raised until after the disposition of the case in this court on writ of error, and the death of Linn. Upon its being remanded for further proceedings, the question

first arose on motion to substitute the executors in the place of the deceased plaintiff. So far, defendants must be held to have acquiesced, if not in the necessity of Linn's being a plaintiff, at least in the propriety of it. No argument or authorities are necessary to show that if Linn was a proper party his executors should have succeeded him. But defendants are not concluded by this apparent acquiescence and failure to raise the question in regard to Linn. The motion to substitute the executors was resisted, and the correctness of the decision of the court was questioned, and the question raised by the answer. An exception was taken to the order of the court making the executors plaintiffs, and sixty days given in which to tender the bill of exceptions. None appears to have been tendered. This should have been done, as the order was not one of those enumerated in the code, where a bill of exceptions was unnecessary. But this failure, probably, will not relieve the court from the necessity of an examination; for, as above stated, the same question is raised by the answer.

But there arises a difficulty; for it is averred that Rockwell was improperly a plaintiff, having no legal interest. The same proposition had been presented to the court by motion, and had, after argument, been overruled. In a subsequent paragraph it was averred that the executors were not properly plaintiffs; that the failure to be substituted in time, and the application of Rockwell to be allowed to prosecute as sole plaintiff, and the order of the court allowing it, worked a *retraxit* or a discontinuance on the part of the executors,— defendants claiming, in effect, by their answer, that the cause could not proceed at all. Such a position was clearly untenable,— certainly anomalous,— and an attempt to abate the suit first as to one plaintiff, then as to the other, piecemeal. At common law the pleader was required, in a plea in abatement, not only to show that the parties were not the proper ones, but to show who were; in the language

of the books, "to give a better writ." Here the attempt was, in effect, to bar the suit by matter in abatement, which could hardly be done even under our Civil Code. Ordinarily, under our practice, the question of too many plaintiffs or defendants is one of no great importance, except in the matter of costs. It can be disposed of at the close of the trial in accordance with the established facts. But in this case it became important on account of the character of some of the plaintiffs as executors, placing defendants under a disability in the way of proof or evidence of their defense.

The contract executed between Linn and defendants had been assigned to Burrell, and by Burrell to Rockwell. Whether it could have been by its own terms legally assigned will be discussed hereafter. It was a question that could only be determined upon the trial. Having been assigned for an unquestioned valuable consideration, he had, unquestionably, such an interest in the subject-matter of the controversy as would make him a proper party, if not an indispensable one, regardless of the character of the assignment, as to whether it was absolute, so as to pass the title, or qualified, as being assigned as collateral security. But, as to the executors, the determination of the question as to the character of the assignment becomes important, in fact determines the question of the right to become parties.

In the third paragraph of the complaint it is alleged that Linn assigned to Burrell his right, title and interest in and to the agreement as security for the loan of $2,700, etc.; that Burrell afterwards assigned his right, title and interest to said contract to Rockwell, "who now holds said contract as collateral security for money theretofore loaned by him to said William P. Linn." In the fifteenth paragraph of the answer it is said: "And defendants further aver, upon information and belief, that the supposed assignment of said contract to said plaintiff was only for the purpose of securing the pay-

ment to said Rockwell of certain debts and claims against said Linn," etc.   That the contract was assigned by both Linn and Burrell, and that Rockwell took and held it as collateral security, is shown by the testimony of Rockwell.   It is nowhere shown or claimed that the assignment was absolute, so as to pass the title and invest the holder with the ownership.   It was in both instances assigned as security for the payment of a loan of a trifle more than one-half its face.

In all transactions of this kind the ultimate object of the inquiry is, what was the understanding and intention of the parties?   And when ascertained such intention must control.   Where the transaction imports nothing more than giving a security, without a sale or change of title to the property, the law makes it a pledge.   In Jones on Pledges and Collateral Securities, § 17, it is said: "An assignment of securities by a debtor to his creditor is presumed to be as collateral security, and not in payment of the debt, in the absence of evidence tending to show an intention that the securities should be applied in satisfaction of the debt, in whole or in part."   In section 15: "A bill of sale, absolute in terms,   *   *   *   intended only as collateral security, is a pledge, if accompanied by a delivery of the property to the creditor." See *Walker v. Staples*, 5 Allen, 34; *Whitaker v. Sumner*, 20 Pick. 399.   "That the assignment is absolute in form is of no consequence as regards the question of intention."   Jones, Pledges, § 17.   A transfer, absolute upon its face, "may be shown by parol evidence to have been executed by way of security, and therefore to be a pledge."   Id. § 15; *Eastman v. Avery*, 23 Me. 248; *Shaw v. Wilshire*, 65 Me. 485.   See, also, in equity, *Morgan v. Dod*, 3 Colo. 551.

The fact stated by Rockwell, that he afterwards advanced a larger sum of money, and was the real party in interest, is unimportant in determining the character of the transaction, so long as it is shown that the nature

of the transaction was not changed by a new contract, and the absolute title vested in the assignee. Not only does the evidence establish the fact of a pledge as security, but, aside from that, when the question as to whether it was a sale or a pledge is raised, unless the debtor shows by positive evidence that it was intended to be a sale, the inference of law is positive that it was transferred only as collateral security. *Leas v. James,* 10 Serg. & R. 307; *Perit v. Pittfield,* 5 Rawle, 166; *Jones v. Johnson,* 3 Watts & S. 276.

Collateral security is defined by Bouvier as " a separate obligation attached to another contract to guaranty its performance; " by Webster, as " security for the performance of covenants, or the payment of money, besides the principal security; " by Worcester, as " security for the fulfillment of a contract or a pecuniary obligation in addition to the principal security." In *Halliday v. Holgate,* L. R. 3 Exch. 299, it was said by Mr. Justice Willes: " There are three kinds of security: The *first* is simple lien; the *second,* a mortgage passing a property out and out; the *third,* a security intermediate between a lien and a mortgage, viz., a pledge where, by contract, a deposit of goods is made a security for a debt, and the right to the property vests in the pledgee so far as it is necessary to secure the debt."

In all cases of a pledge as collateral security, the general property remains in the debtor. The creditor has only a special property,— a lien,— a right to retain his security until the payment of the debt. When the debt is paid the security reverts. If default is made the assignee can proceed to dispose of the security, discharge his own debt, and the balance, if any, goes to the assignor or debtor. Jones, Chat. Mortg. § 4; *Jones v. Baldwin,* 12 Pick. 315; *Robertson v. Wilcox,* 36 Conn. 426; *Conner v. Carpenter,* 28 Vt. 237; *Trust Co. v. Rigdon,* 93 Ill. 458. It follows that the transaction, in the first instance, having been one of pledge as collateral security, and

never having been changed by subsequent contract, and
no default having been made, and the property of Linn
extinguished by sale, he and his estate remained the
owner of the contract assigned, subject to the lien of
Rockwell; and the special property of Rockwell could
have been at any time, by becoming due, or by consent
of parties, extinguished by payment of the amount for
which it was held; and that Linn was a proper party
during his life, and, having been such, his executors were
proper parties after his death.    See Gen. St. p. 1058, ch.
115, § 155.

We do not intend to be understood as saying that either
Linn or his executors were absolutely indispensable par-
ties, and that Rockwell could not have prosecuted as sole
plaintiff, but that Linn, and after him his executors, had
a legal right to be parties at their own election.    They
could not be precluded at the option of defendants, nor
could their right to be parties be extinguished by the act
of Rockwell in asking to be made sole plaintiff, and the
action of the court in making him so.    The ultimate ef-
fect of making the executors plaintiffs may have been
disastrous to defendants, by placing them under a dis-
ability in establishing a defense.    They were unfortunate
in not being able to make their proof by evidence aside
from their own; but this grew out of a rule of evidence,
not out of the fact of the executors having been made
parties.    Although such was the result of their having
been made parties, it could in no wise affect or deter-
mine their right to be such and to prosecute the suit.

This, in effect, disposes of the question raised in regard
to the assignment of the contract by Linn; defendants
contending that by its terms it prevented any legal trans-
fer, and that Rockwell took nothing by it.    The legal
effect of the provision in the contract that it should not
be assigned must be construed to be that the title to the
chose in action should not pass to another so as to pre-
vent defendants from asserting any equity or defense

that might arise between the original parties. In the language of the contract, the object was to prevent its negotiability. This contract was not violated by a pledge as collateral security. The assignees, having only a lien or special property, held it subject to all the existing equities. Such is always the rule in regard to choses in action held as collateral, unless they are negotiable upon their face, and are taken out of the rule by the operation of the law-merchant. If this is not conclusive of the question, there was evidence, although contradictory, from which the jury might have found, as they evidently did find, that defendants consented to the transfer. Section 1, chapter 116, General Statutes, is as follows: "That no party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends  *  *  *  as the executor or administrator, heir, legatee or devisee of any deceased person,  *  *  *  unless when called as a witness by such adverse party so suing or defending, and also except in the following cases, namely."

The evidence offered by defendants, and excluded by the court, was not taken out of the general rule by any exceptions to it. After a careful examination of the testimony offered and excluded, we cannot say that the court erred, or extended the rule beyond its proper limits; and the rule is a just and salutary one. Finding that the executors were properly made parties, and the only evidence offered in support of many of the averments in the answer was that of the defendants, which was properly excluded, disposes of many of the supposed errors. The defense of misrepresentations on the part of Linn in regard to title, rights, and development of the property sold, to induce the purchase, was untenable — *First*, from the character of the conveyance made by Linn; *second*, from the conduct of defendants after the purchase, which resulted, in law, in affirmance and ratification.

When defendants went into the possession and occupation of the property, and found they had been deceived by the statements of Linn, they could have either rescinded at once, or affirmed and brought an action in the nature of an action on the case at common law, for damages for the deceit, and recouped or set off such damages against their own obligation to pay. Neither was done. Having entered into the occupation of the property, and proceeded to exercise rights of ownership, and to deal with it as their own, they were estopped and precluded from asserting the defenses set up, except by establishing by evidence the modification of the contract as alleged, which, in effect, would have been the abrogation of the old contract entirely, and the substitution of a new and different one. Such alleged contract not having been reduced to writing, and defendants having no evidence but their own to establish it, and that being inadmissible, the several defenses failed as against Linn's executors. As to Rockwell, there was evidence before the jury sufficient to warrant it in saying that defendants, failing to notify Burrell and Rockwell of their supposed defenses against Linn when applied to for information, were estopped by their own conduct.

The other and remaining errors assigned were predicated upon the supposed fact that the executors were erroneously made parties, and defendants erroneously precluded from making the proof of the alleged new contract, and hence are disposed of in our view of the case. The defendants having failed to establish their defense by competent testimony, in fact having been prevented from putting in any testimony by reason of its character to support the averments in the answer, the court below was warranted in finding that the matters relied upon had been considered and determined by this court on error in the former case, and were *res adjudicata*, and in so regarding and treating them. Although, as before stated, the defendants, by the course pursued, and the

rulings of the court, had been placed at a disadvantage, yet this resulted not from the erroneous acts or rulings of the court, but was the unfortunate result of failing to procure competent evidence; a result quite frequent in the history of judicial proceedings. The judgment should be affirmed.

PATTISON, C., concurs.   RICHMOND, C., dissents.

PER CURIAM.   For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*