WILLIAMS, PLAINTIFF IN ERROR, v. CARR, ADM'R,
DEFENDANT IN ERROR.

1. EQUITY—INJUNCTION TO RESTRAIN PROCEEDINGS AT LAW.

To warrant the interference of a court of equity to restrain the enforce-
ment of a judgment at law, a clearly established case of fraud, acci-
dent or mistake must be shown, sufficient to deprive the person
aggrieved of the defense at law.

2. COMPETENCY OF WITNESSES, SAME IN EQUITY AS AT LAW.

The statutory prohibition against a party to an action or directly in-
terested therein testifying of his own motion or in his own behalf,
when the adverse party sues or defends as the executor or adminis-
trator of a deceased person, is the same in equity as at law.

3. LIMITATIONS.

The statute of limitations is a personal defense of which a defendant
may or may not avail himself at his pleasure.

4. SAME.

As between a principal and his surety who has paid the debt, the stat-
ute of limitations runs from the time of payment.

5. WITNESSES—STATUTORY DISABILITY.

The competency of a witness who is under statutory disability by rea-
son of his being interested in the result of an action cannot be re-
stored by a release of liability.

*Error to the District Court of Arapahoe County.*

Messrs. THOMAS, BRYANT & LEE, for plaintiff in error.

Messrs. MARKHAM & CARR, for defendant in error.

REED, J., delivered the opinion of the court.

This was a suit in equity brought by plaintiff in error to
restrain the collection of the judgment at law obtained by

the defendant in error against the plaintiff, in *Williams v. Carr, ante,* 363, and is an adjunct of that case.

The allegations in the complaint are identical in substance with the motions and defenses set up in the answer and adjudicated in that case, containing no new matter whatever.

It is hard to determine the theory upon which counsel based the suit, unless it can be gathered from the following contained in the argument of counsel:

" The deposition of Ulman was taken in the state of New York, and that his testimony therein given and recorded was in support of the answer filed by the plaintiff, Williams, in the suit at law; that McCrary having died in the meantime, and the defendant Carr being the prosecutor of said cause in the capacity of administrator for McCrary, deceased, the deposition of Ulman could not be read in evidence in said cause ; by reason of such fact the bill of complaint alleges that the cause coming on for trial on the 29th day of March, A. D. 1892, before the district court of Arapahoe county, a finding was had against this plaintiff and in favor of the defendant herein, as prayed for in the complaint, for the amount of said note, less certain part payments and credits thereon, together with interest and costs. That Ulman was the only witness who knew of the extensions in time of payment of said note, and the subsequent payment thereof, and inasmuch as he was held incompetent as a witness against the administrator, by reason of his interest, and also that he was a party to the record, the plaintiff herein was deprived of the benefit of his defense in said cause at law. An injunction was prayed for perpetually enjoining and restraining the defendant from further attempting to enforce said note or prosecuting any case at law for its collection. A temporary injunction was allowed by the court below, which was afterwards dissolved and the bill dismissed upon the sustaining of the defendant's demurrer to plaintiff's bill of complaint. Whereupon the court gave judgment in the law action for the plaintiff and against the defendant."

A mistaken theory based upon the supposition that by an

attempted change from law to equity, the same issues could
be retried; the evidence rejected in the former, admitted,
and with no new evidence or facts, a different result could
be reached.   In support of this theory it is said in argument:
" The injunction prayed for is not asked for the purpose of
restraining a court at law from the exercise of any of its
rights and powers, nor is it asked under the impression that
the equity side of the court exercises and wields a supremacy
over the side at law.   In all of such proceedings the injunc-
tive relief is directed, not to the court itself, so as to hamper
and retard it in any way, but to the litigants, for the purpose
of preventing and restraining them from taking any further
steps in the prosecution of their cause."

I cannot see that this doctriné is applicable or in any way
assists, for, whether the injunction were directed to the court
or parties, the effect would be the same—a reversal of the
former judgment—and it would seem to be a matter of very
little importance to a plaintiff who had obtained a judgment
at law whether the judgment was reversed by the same court
or any other adjudication in equity, or he was perpetually
enjoined from collecting or attempting to collect it.   Either
would be equally fatal.

One important and indispensable requisite to obtaining
equitable relief has been entirely overlooked.   It is clearly
and briefly stated in 1 High on Injunc., sec. 47.   "And to
warrant the interference a clearly established case of *fraud*,
*accident* or *mistake* must be shown, sufficient to deprive the
person aggrieved of the defense at law."   See, also, 2 Story,
Eq. Juris., sec. 885; *Sackett v. Hillhouse*, 5 Day (Ct.) 551;
*Dale v. Roosevelt*, 5 Johns. Ch. 174; *Field v. Cory*, 3 Hals.
574; *Rogers v. Cross*, 3 Chand. (Wis.) 34.

In this neither fraud, accident nor mistake are asserted, and
nothing more than that the defendant in the action at law
had no legal and competent evidence to sustain his defense.
The statutory prohibition rendering both Williams and Ulman
incompetent to testify was the same in equity as at law; if

such were not the fact the statute could be abrogated in every instance by a supposed resort to equity.

In support of the general propositions here stated: see *Butler v. Rockwell*, 14 Colo. 138; *Fetta v. Vandevier*, 3 Colo. App. 419; *Savage v. Allen*, 54 N. Y. 458; *Maxell v. Lutz*, 34 Ill. 388.

The judgment of the district court sustaining the demurrer and dismissing the complaint will be affirmed.

*Affirmed.*

ON PETITION FOR REHEARING.

BISSELL, P. J., delivered the opinion of the court.

In the argument allowed on this petition for rehearing, counsel have presented their positions with so much earnestness, and have so fully discussed questions not suggested in the original briefs, as to render it expedient to express the views of the court respecting these matters. There are two cases and two opinions necessarily involved in this rehearing. The first is an action at law and the second is a bill in equity. It is desirable to collate a few of the salient facts which must form the basis of our conclusions. Williams and Ulman on the 12th of April, 1884, jointly executed their note to the order of McCrary for two thousand dollars. Subsequently, Ulman delivered to the payee sundry bonds of a mining company, which the payee afterwards sold, crediting the proceeds on the note. The suit at law was brought to recover the balance. Both Ulman and Williams were made parties, but service was had only on Williams—Ulman apparently being a nonresident. Process was issued against both and served on one. Williams defended by three pleas. One set up that he was surety to the knowledge of McCrary who had extended the time and thereby released Williams; another that the bonds of the mining company were delivered to McCrary and by him received in payment, whereby the note was discharged; the third that the bonds were delivered as collateral

security for the payment of the note, that they had been sold for less than their value, and that McCrary was bound to account for the proceeds which were sufficient to satisfy the sum sued for. This suit was started within the period of the statute of limitations, and came to trial on the issues tendered by Williams. Pending the trial, the payee McCrary died, and his administrator was substituted and prosecuted the suit. Before the hearing, Williams sued out a *dedimus* to take the deposition of Ulman who then lived in the city of New York. The deposition was taken, but at the proper time a motion was made to exclude it on the ground that the suit was being defended by the administrator of a decedent, that Ulman was a party and directly interested in the result, whereby his competency as a witness was destroyed. The court accepted the conclusion and excluded the evidence. The case went to trial upon the other testimony offered and the court found the issues for the plaintiff. Thereafter the equitable suit was started. Judgment, however, was finally entered in the lawsuit, and this left the principal object of the bill one to procure an injunction perpetual to restrain the administrator from enforcing the judgment which he had obtained. The bill states no equities other than those which are deducible from a history of the proceedings in the suit at law. The complainant simply charges the relations between Ulman and Williams, the payment of the note by the delivery of the bonds, an agreement to surrender the paper and a failure to carry out the convention, and the inability of the plaintiff to prove these facts because of the incompetency of himself and Ulman as witnesses in the suit at law. It is not charged except in the most general way, if at all, that the statute of limitations has run against Ulman. The phraseology of the bill is " The statutes of limitation having operated against Ulman, the plaintiff will be powerless to collect any part of said judgment from him." There is no allegation of fraud, nor any averments showing accident, or mistake, or surprise, and the bill is in fact wholly based for its equity upon the statement that the complainant failed in

the suit at law because he had no competent witness by whom he could prove his defense.

The result of all these facts and matters is that the administrator has got a valid judgment against Williams, which has been affirmed on appeal in this court, and which he is therefore now entitled to collect. The substantial inquiry then is whether a party who is rightly sued on a legal demand to which, as he asserts he has perfect legal defenses, to wit: payment, and accord and satisfaction, which he interposes, can, in the event of his failure to sustain his pleas because of the incompetency of his witness under the statute, avoid the statutory disability by filing a bill in equity, wherein he sets up the same matters. Manifestly if the statutory disability still exists this could not be true. If Ulman were disqualified at the time of the bill filed, and the bill fails to state facts which remove that disqualification, the complainant would not be entitled to equitable relief. It is equally true in the present case, as in most others of this description, the bill cannot be maintained at all because it fails to state any matters which authorize a court of equity to interfere.

So far as can be discovered from the bill which was demurred to, Ulman is still disqualified to testify. There is no allegation that the statute has run. There is nothing in either case which enables the court to determine as a matter of fact that the statute has become operative, whereby Ulman can in any wise be said to be without interest in the result of the suit. In the first place, the suit was commenced in apt time under the statute to charge both Williams and Ulman, and so far as Ulman is concerned, from all that the record discloses, should he come within the jurisdiction, the suit could still be prosecuted as against him to a final judgment, unless he was able to make some satisfactory and sufficient defense. We are not at liberty to infer that because the note is dated in April, 1884, the action on it has been thereby barred, or that Ulman is deprived of his interest. As stated, there is a suit pending in our jurisdiction which admits a prosecution to a successful judgment against him—

wherefore, so far as the courts of Colorado are regarded, the action is not barred. The statute of limitations is a personal defense, of which a defendant may or may not avail himself at his pleasure, and if the account be a just one, we have a right to assume that it will not be resisted upon any such basis. There are other considerations which are equally conclusive. So far as the bill is concerned, in the absence of proper and apt averments which destroy the right to presume that there are matters of exception which take the case out of the operation of the statute, we have no right to conclude that Ulman may not have promised within the six years, and that he may not have paid either interest or principal which would destroy the statutory defense. From both records it is fairly deducible that during the life of the note Ulman did deliver to McCrary sundry bonds of a mining company which were sold, and the proceeds applied *pro tanto* to the reduction of the principal debt. Everybody knows that if this was done by authority, this payment would, under proper circumstances, be good as against Ulman. This we would have a right to presume in the absence of positive averments to the contrary in the bill. Taking all these circumstances into consideration, we must conclude that Ulman is disqualified under the statute. He undoubtedly still has an interest conjointly with Williams in resisting the payment of that debt. Williams nowhere alleges in his bill that he is without a right of action as against Ulman, and that should he pay the note he would have no legal claim enforcible against that party. The chances are that he has, or at least that he would have, if Ulman were within our jurisdiction. If he is without that right as against Ulman, it is his own fault and negligence, and he has no right to call upon a court in equity to interfere in his behalf. While this suit was pending in Colorado, if he occupied the relation to Ulman concerning the note which he now asserts, to wit: that of a surety, he was doubtless possessed of the right to notify Ulman to appear and defend the suit, and thereby bind Ulman by the judgment in case of a recovery. Under these circum-

stances, should he afterwards pay the note, the statute of limitations would not run as between him and Ulman except from the date of payment. Wood on Limitation of Actions, § 145; *Thayer v. Daniels,* 110 Mass. 345; *Walker, Administrator, v. Lathrop,* 6 Iowa, 515; *Wesley Church v. Moore et al.,* 10 Pa. St. 273.

There is in this case no basis for the distinction which is suggested by some text writers, although without any supporting authority cited, that in the case of a surety upon a note, the note must be paid within the limit of the statute, in order to entitle the surety to compute his time from the day of his payment. Wherever any analogous doctrine is asserted by the cases, it is where the action is necessarily brought by the surety on the original paper. *Williams v. Durst,* 25 Tex. 667; *Kimble v. Cummins,* 3 Metc. (Ky.) 328.

In the present case the action would be brought by Williams against Ulman on the implied promise resulting from the payment of the money by him to the holder of the principal's note. Being a joint maker with Ulman, his action could not be on the paper. It is in any event doubtful whether, under the circumstances like the present, where a suit is actually commenced against the principal, within the period of the statute whereby its running is stopped, the necessity to pay within the six years could ever be insisted on, since the effect would be to deprive the surety of some legal rights, and some legal responsibilities. If he was advised by his principal that the note had been paid, he would, in order to successfully maintain an action against the maker, be bound to defend and call on his principal to protect him from the judgment. These considerations dispose of that branch of the bill which depends for its equity upon a consideration of the limitation statute.

Under well settled equitable rules, a bill can never be maintained to restrain the collection of a judgment entered upon a legal demand, which for its equity depends on the assertion of a defense available in an action at law, if the complainant has not been deprived of his rights by the fraud

of the defendant in the equity suit, or unless he both charges and proves that he was prevented from interposing this legal defense by some accident or mistake from which equity will relieve. Pom. Eq. Jurisprudence, vol. 3, § 1361; *Hendrickson v. Hinckley*, 17 How. (U. S.) 443; *White v. Cahal*, 2 Swan, 550; *Champion et al. v. Miller et al.*, 3 Jones' Eq. (N. C.) 194; *Peace v. Nailing*, 1 Devereux's Eq. (N. C.) 289; *Day v. Cummings*, 19 Vt. 496.

This well settled doctrine fully demonstrates the want of equity in the bill. The defenses suggested were those of payment and of accord accomplished by the sale of bonds delivered as collateral security. These were legal defenses which could be interposed to the suit on the note, and if sustained would defeat a recovery. We have been referred to no case which holds that the want of competent witnesses to maintain an alleged defense will sustain a bill to restrain the collection of a judgment entered after due trial upon sufficient testimony. The disability, under our peculiar statute, so far as interest is concerned, is not one which is removable by the consent of the party offering it as in the case of interest at the common law. Wherever a party sues, or defends as a representative of a decedent, neither the party nor one concerned in the result can be permitted to testify. It would not have been competent for Williams to have attempted to remove Ulman's interest by giving him a release of any liability over for two reasons:—First, he was incompetent because he was a party; and, second, because at the time of the trial he had that interest in the result of the suit which rendered him absolutely incompetent under the statute. This is a statutory disability. This statute, which was enacted for the protection of estates, cannot be evaded nor its disabilities removed by resort to the equitable jurisdiction of our courts on the happenings of events subsequent to the trial. There would have been no question as to Ulman's incompetency if he had been a party to the suit brought by Williams against Carr, the administrator, to restrain the collection of the judgment entered in the suit of Carr against Williams and Ulman.

The circumstance, that by reason of the nature of the action and the form of the litigation, Williams is enabled to leave Ulman out of the case so that he is not under disability as a party, cannot, while his interest remains, be made operative to restore his competency as a witness, and thereby enable Williams to sustain a plea which he was theretofore unable to prove in the law action. Ulman must remain an incompetent witness. But if the statute had run whereby he was deprived of his interest in the suit, the bill states no facts which constitute any equity sufficient to entitle Williams to restrain the collection of the judgment which was rightfully entered.

The rehearing will be denied.

*Rehearing denied.*