SKIDMORE *v.* LITTLE.

(*Knoxville*, September Term, 1943.)

Opinion filed June 10, 1944.

Moon & Anderson, of Chattanooga, for complainant-appellant.

Richard W. Hagan, Jr., and Joe V. Williams, both of Chattanooga, for defendant-appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

The bill in this case was filed by the executrix of the late Lyle C. Stovall to obtain a construction of a certain provision of the latter's will. The chancellor and the Court of Appeals differed in their interpretations of the document and this Court granted a petition for *certiorari* filed by the complainant executrix.

Stovall was an insurance agent who had done business in Chattanooga for many years. He died leaving a will in which he named the complainant, Mildred H. Skidmore, his executrix and testamentary trustee. It is unnecessary to set out the will in full since only one provision is involved and that is as follows:

"My trustee having been faithful to me in the management of my business for many years, and to a large extent

responsible for any success of the business, I hereby will to Mildred H. Skidmore one-fourth of the net proceeds from the sale of the business. This being in addition to any other remuneration which she may charge or be entitled to receive for services rendered as trustee or executor of my will.''

The defendant, Mrs. Little, is the sister of Stovall and is entitled under his will to all of his estate except such portion as goes to Mrs. Skidmore under the provision above quoted.

After Stovall's death Mrs. Skidmore ran the business for a few months, collected accounts due and paid off obligations. She then sold the business for $6,000. She also has in her hands some $500, the balance realized from accounts due the agency over obligations of the agency.

The controversy between these ladies arises in this way. Some time prior to his death Stovall borrowed from his mother and from his sister $4,200 evidenced by five notes. It appears that these notes have been paid off by Mrs. Skidmore out of funds belonging to the personal estate of the deceased. The notes were paid to Mrs. Little, her mother having died. Mrs. Little insists that the money borrowed on the notes was used by Stovall in the insurance business, that it was borrowed for the business, and that the $4,200 should be charged against the $6,500, the proceeds of the business in Mrs. Skidmore's hands before Mrs. Skidmore receives the one-fourth interest given to her by Stovall's will. Mrs. Skidmore's contention was that Stovall always regarded these notes as a personal obligation, that they were never set up on the books of the insurance agency as an obligation of that enterprise, and that she is entitled to one-fourth of the entire $6,500.

Without going into the details, the chancellor decided the controversy in favor of Mrs. Skidmore but the Court of Appeals reversed his decree and decided the case in favor of Mrs. Little.

Much could be said to support either view were it not for the form of the indebtedness. As stated above, the indebtedness to Stovall's mother and sister was evidenced by five notes and these are all collateral notes on conventional bank forms. In one of the notes Stovall pledges to the holder "as collateral security for the payment thereof" shares of stock in certain corporations and "27/50 of all renewals or expirations of my insurance business." In another of the notes he pledges certain shares of stock and "8/50 of all renewals or expirations of my insurance business." In another he pledges "1/5 of all renewals or expirations of my insurance business." In another he pledges "1/10 of all renewals or expirations of my insurance business." And in another he pledges certain shares of stock and "the remainder of the value of expirations of my business not heretofore pledged."

This pledge of the income of the insurance agency as collateral security to the notes unmistakably shows that Stovall regarded the notes as a personal obligation apart from an obligation of the insurance agency. It is true that the insurance business was Stovall's personal property and the income therefrom would have been liable for his debts. Here, however, we are endeavoring to put ourselves in Stovall's place, to interpret his will, and to ascertain what he meant by the bequest to Mrs. Skidmore of one-fourth of the net proceeds of the sale of his insurance business. He was a business man of experience and he knew the meaning of *collateral* and the rights of the creditor and debtor with respect to collateral security.

He knew that the primary obligation was that of the debtor and the right to subject the collateral to the debt was secondary. That the debt being paid, as it has been here, the collateral could not be subjected to the obligation.

■ Collateral security is thus defined:

"A security given in addition to the direct security and subordinate to it, intended to guarantee its validity or convertibility or insure its performance; so that if the direct security fails, the creditor may fall back on the collateral security.

. . . . .

"Collateral security in bank phraseology means some security additional to the personal obligation of the debtor. *Shoemaker* v. [*National Mechanic's*] *Bank* (Fed. Cas., No. 12,801, 2 Abb., 423." Black's Law Dictionary.

"It is merely a concurrent security for another debt, . . . subsidiary to the principal debt . . . and . . . if the principal debt be paid off, the debtor is entitled to a restoration of the collateral security." *Munn* v. *McDonald*, 10 Watts, Pa., 270, 273.

■ "In all cases of a pledge as collateral security, the general property remains in the debtor. The creditor has only a special property, a lien, a right to retain his security until payment of the debt. When the debt is paid, the security reverts." *Butler* v. *Rockwell*, 14 Colo., 125, 23 P., 462.

Other like definitions of collateral security will be found in 7 Words and Phrases (Perm. Ed.), p. 601.

■ It seems to us that Stovall's pledge of the income—the real value—of the insurance agency as collateral to these notes clearly showed he regarded assets of the agency as a thing apart from his other personal property.

That the liability of the agency for satisfaction of these notes was secondary. This being so the net proceeds of the sale of the agency are not liable for a debt of Stovall's which has been paid off out of his general estate.

For the reasons stated the decree of the Court of Appeals will be reversed and the decree of the chancellor, modified as indicated in this opinion, will be affirmed. Remand and divide costs.

CHAMBLISS, NEIL, PREWITT, and GAILOR, JJ., concur.