Hurlbut, J.,
rendered the opinion of the court.
*274 Suit brought October 9, 1911. Plaintiff (defendant in error) by his verified complaint alleges in brief that in June, 1910, he bought from defendants eighty acres oí land in Rio Grande county, Colorado, (herein designated as the Jemison land); that thereafter plaintiff contracted to- sell this land to defendants in consideration of certain promissory notes given by one Matzick, which were secured by mortgages on on land in Furnace county, Nebraska; that defendants failed to perform their part of the contract, but offered in lieu thereof to- pay plaintiff for his said land with notes executed and delivered by William H. and Cora B. Hartman, aggregating the sum of $8,700, which notes were secured by a second mortgage upon one hundred and sixty acres of land in Conejos county, Colorado, and which they represented to be much more valuable as security than the Matzick notes and mortgage; that plaintiff accepted the same and subsequently paid defendants an additional sum of $1,000; that, at the time plaintiff sold the Jemison land, and accepted the Hartman notes in consideration therefor, there was a prior mortgage indebtedness existing against the Hartman land for the sum of $3,635, which was to be paid by plaintiff out of the proceeds of the Hartman notes. It is then alleged that for the purpose of inducing plaintiff to accept,the Hartman notes and mortgage, defendants falsely and fraudulently represented to plaintiff that they were of greater value, and were better security than the Matzick notes and mortgage; that each of said statements were false and untrue, and known by defendants to be so, and were made by them for the purpose of defrauding plaintiff'out of the Matzick notes and mortgage; that plaintiff believed such statements to be true, and acted under such belief; that by means of such false and fraudulent representations defendants induced plaintiff to release them from the Matzick contract. It is also alleged that, as an additional reason for inducing plaintiff to cancel the Matzick contract, defendants fraudulently stated that Hartman had made great preparations for the payment of his notes, by farming, *275 in addition to his own, some other land, rented to him by defendants; that such uatement was false and made for the sole purpose of defrauding plaintiff; that all the statements made by defendants as to the relative values of the Hartman and Matzick notes, mortgages and lands, were false, and fraudulently made, and if the same had not been made plaintiff would not have canceled the Matzick contract and accepted the Hartman notes.
The case was tried to the court without a jury, and judgment rendered for plaintiff in the sum of $5,523.
Under the pleadings and record as made, this action must be regarded as one based upon fraud and deceit, and recovery, if had, must be supported by positive, clear and convincing evidence. The entire negotiations between plaintiff and defendants involved three separate and distinct transactions: First, the transaction involving the Jemison land, which was purchased by plaintiff, and for which he received a deed. The record is clear that in this matter no fraud was proven against defendants or any thereof, and no> such claim is now made. The plaintiff himself testified as follows:
“Q. You do not claim that they (defendants) represented any fraud to you in the sale of this Jemison land? A. Nothing, only they had the price pretty tolerably high.
íj* 5¡5 íjí ^ *
Q. So' you paid them the money and you got good value at that time for this money, didn’t you? A. Yes, sir.”
It will therefore not be necessary to further allude to- this transaction, unless incidentally. Second, the transaction concerning the Matzick notes and mortgage. It was founded upon a written contract executed by plaintiff and the defendant William F. Everist, January 23, 1911. It is conceded that this contract was abandoned by mutual consent of the signers. The record fails to disclose any evidence of fraud or deceit, against defendants or any thereof, in this deal, and it. need not be further noticed. The third and last transaction involves the sale of plaintiff’s interest in the Jem *276 ison land' for the Hartman notes, aggregating $8,700. The fraud charged is based on this exchange, and is the controlling issue. Its determination is decisive of this appeal. We have searched the record with care to obtain a knowledge of all material evidence that tends to support this issue on behalf of plaintiff.
Plaintiff’s position is that his evidence clearly establishes the fraudulent representations and actions of defendants, as pleaded.. We will discuss the alleged frauds-charged against the defendants in the order pleaded in the complaint. Defendants, in their pleadings and at the trial, vigorously denied having made the false representations charged in the complaint concerning the relative values of the Matzick and Hartman notes; but, assuming them to' be true, as the trial judge must necessarily have done, are they sufficient in law to sustain an action for fraud and deceit? There is nothing in the record tending to show that plaintiff was tricked into buying the Hartman notes. It appears from his own testimony that he was willing to, and did, abandon the Matzick contract and exchange his interest in the Jemison'land for the Hartman notes. The evidence 'discloses that he knew he would be unable to pay the Jemison mortgages, which were approaching maturity, and he was willing b> escape total loss of his Jemison land, by exchanging that interest for some other real property with a more favorable status. It is not therefore to be wondered at that he accepted the Matzick proposition immediately upon its presentation to him, and entered inio that contract. Before that contract was consummated, however, the defendant Everist discovered that he was unable to secure the Matzick notes for plaintiff, and promptly informed him of that fact, at the same time suggesting that defendants had other notes or securities that they would be willing to substitute for the Matzick notes, if satisfactory to plaintiff, whereupon plaintiff at once expressed his willingness to act on the suggestion. He did so, and soon thereafter abandoned the Matzick contract and closed the Hartman deal. Taking the *277 most favorable view of all the evidence on behalf of plaintiff, 'defendants’ statements, as to the relative values of the two sets of notes and mortgages (Matzick and Hartman), appear to be mostly “trade talk’’ and exaggeration of the value of one set of notes and securities over the other. At most they were but expressions of opinion at the time of the deal. These parties were dealing at arms’ length. Both the Matzick and Hartman lands were 'covered by second mortgages which secured the notes offered to plaintiff. The 'Matzick land was located in Nebraska and the Hartman land in Colorado. There is no clear showing by the record that the Matzick notes and mortgage were more valuable as an investment than those of the Hartmans. Plaintiff agreed to sell to^ defendant Everist his interest in the Jemison land for certain notes signed by Matzick, apparently aggregating $5,500. The record does not disclose the amount of the first mortgage on the Matzick land, so that, the Matzick notes being secured by a second mortgage, and there being no' evidence of the amount of the first, which was a paramount lien, we do' not see how the court can reasonably say these second mortgage notes were of greater value than the Plartman second mortgage notes. The evidence shows that the first Hartman mortgage was $3,635. Be that as it may, we do not think that under this record any statements made by defendants to plaintiff, concerning the value of the notes in question, would sustain an action for fraud and deceit. To sustain such an action there must be, in addition to an exaggerated statement of value of property by the seller, some circumstance attending the same that shows the purchaser, in the exercise of reasonable prudence and caution, was overreached, or fraudulently tricked into relying thereon, to his damage. We discover no such situation here.
The rule as to statements of value, made by a seller to a purchaser is, in Baum, et al. v, Holton, et al., 4 Colo. App. 406, 36 Pac. 154, expressed as follows:
*278 “It is no doubt true that as between seller and buyer, statements of value by the former ought not to be taken as trustworthy by the latter, and that the law will not help a purchaser who accepts exaggerated or false statements of value made by a vendor; but this rule does not hold good where a confidential relation exists between the parties; or where one of the parties professes to have special knowledge of the value of the property, and of which the other, being ignorant, to the knowledge of the former, trusts to his good faith.”
Applying the rule to the facts before us it does not appear from the record that any artifice was practiced by defendants upon plaintiff to induce him to purchase the Hartman notes in lieu of the Matzick notes; nor does it appear that any effort was made by defendants to induce plaintiff to forego an examination of the Hartman land. It was located about eighteen or twenty miles from where plaintiff lived, and, he being a farmer and the premises being agricultural land, common prur dence would suggest an inspection of the same on his part before surrendering his Jemison land for the Hartman notes which were secured only by a second mortgage. This seems to have been his usual custom, for he testified that he never bought land unless he first saw it. Plaintiff contends that he was tricked into' riot examining the Hartman land, in the following manner: He claims that defendants waited until he was busily engaged in harvesting his crops and then defendant Vastine came to' his house in an automobile and importuned him to settle the matter up at once, as he intended to leave for Nebraska that evening; and that he thereupon went to town with Vastine, and closed the deal for the Hartman notes. When plaintiff was asked why he did not first go and examine the land he answered because he believed defendants’ statement that the Hartman notes were more valuable than those of Matzick, that he was busy with his crops, and took their word for it. He stated, however, that neither Vastine nor Everist did anything to prevent him from looking at the land, *279 and that Vastine simply stated he wanted to fix the deal up that evening so he could go away. We discover nothing of a fraudulent nature in this transaction, as it is not shown that Vastine did not leave for Nebraska that evening as he stated he intended to do. It is worthy of observation that the record fails to show plaintiff to have expressed at any time a desire or intention to personally inspect the Hartman land before making the exchange. The evidence shows that the greater part of the statements of value, made by defendants, were directed toward the relative value, as security, of the two sets of notes and mortgages, the Matzick and Hartman. It is undisputed that as soon as Everist told plaintiff he was unable to obtain the Matzick notes and mortgage, according to previous understanding, he offered to “turn back his (Drake’s) money and land,” “just like you had it,” at the same time stating to him that defendants had some other notes in the bank they were willing to trade him if satisfactory. Plaintiff declined, however, to receive back his land (Jemison tract), or the money. The undisputed fact, that the Hartman notes of $8,700 delivered to plaintiff were indorsed by defendants without recourse, is of no great importance, as such indorsement was thoroughly explained to plaintiff before he took the notes. Plaintiff admits this to be true. If all the evidence be considered together, even in the most favorable light for plaintiff, we are not convinced that it establishes a case of fraud, against defendants, within the recognized rule herein referred to.
In Andrus v. St. Louis S. & H. Co., 130 U. S. 643, 32 L. Ed. 1054, 9 Sup. Ct. 645, the court had under consideration an action based on fraud and deceit in the sale and purchase of a lot in Leadville, Colorado. Plaintiff there contended that defendant made fraudulent representations to him concerning the title and possession of the lot in question. Justice Field, speaking for the court, said:
“The law does not afford relief to one who suffers by not using the ordinary means of information, whether his *280 neglect be attributable to- indifference or credulity-; nor will industrious activity in, other directions, to the neglect oí such means, be of any avail.”
In Parker v. Moulton, 14 Mass. 99, 19 Am. Rep. 315, the court said:
“The affirmations- here set forth as between buyer and seller, it has been repeatedly decided, will not support an action, although the defendant knew them to be false when made. They concern the value of the land or its condition and adaptation to particular uses, which are only matters of opinion and estimate, as to which men may differ. To such representations -the maxim cwueat emptor applies. The buyer is not excused from an examination unless he be fraudulently induced to forbear inquiries which he would otherwise have made.”
In Ellis v. Andrews, 56 N. Y. 83, 15 Am. Rep. 379, the court said:
“Upon the question of value the purchaser must rely upon his own judgment; and it is his folly to rely upon the representations of the vendor in that respect. * * * In Van Epps v. Harrison (5 Hill 65), it is stated as undoubted law that an action will not lie by a purchaser against a vendor upon false and fraudulent statements of the vajue of the property sold, made while negotiating the sale. This was concurred in by the entire court.”
Kimber v. Young, 137 Fed. 744, 70 C. C. A. 178 (Colorado case) is well reasoned, and discusses the same question now under consideration. The court says:
“Positive statements as tp- value are generally mere expressions of opinion and as such cannot support an action of deceit.”
The court further says, quoting from Kimball v. Bangs, 144 Mass. 321, 11 N. E. 113:
“The law recognizes. the fact that men intentionally overstate the value and qualities of the articles which they *281 have to sell. All men know this and a buyer has no right to rely upon such statement.”
Numerous other cases could be cited in line with the foregoing authorities, but we need not extend the list.
Plaintiff also contends that defendants made false and fraudulent statements to him concerning the efforts being made by Hartman, in the way of extensive farming, tO' obtain money to meet the payments upon his notes at their maturity. He states that defendants told him Hartman was honest, and should meet his payments with the big crops he was putting in; that he was also farming some land he had rented from them; that he was putting in 200 acres of oats, 30 acres of potatoes,‘and' some other products; and that he would meet the notes “as fast as they became due, without doubt.” It appears that some time (date not given) after plaintiff accepted the Hartman notes, he visited the land and found thirty or thirty-five acres of potatoes planted, as represented, but ascertained that only five acres of oats, instead of two hundred acres, were planted. Admitting that only five or six acres of oats were planted, instead of .two hundred, it is hardly reasonable to presume that plaintiff would be entirely influenced to convey his interest in the Jemison land, upon which he had paid $5,500 in cash, for second mortgag-e notes aggregating $8,700, on other property, upon the mere belief that Hartman was engaged in planting two hundred acres in oats; besides, there is no showing as to the probable value of that quantity of oats for that season. It is not claimed, however, that Everist told plaintiff two hundred acres of oats, etc., had already been planted by Hartman. He stated that Hartman was putting in the same. The record shows this conversation to have taken plaice in March. From this a fair presumption arises that the greater part (if not all) of the two hundred acres of oats, etc., was to be planted by Hartman subsequent to the date of the conversation. This fact is important; as the law seems to be well settled that an action for fraud and deceit cannot be successfully predicated upon false *282 representations concerning events to occur in the future. In order to sustain such an action the representations must relate to something that is existing at the time or has taken place, in the past. ,
It may be conceded, that the record shows, on the part of both defendants, Everist and Vastine, a rather earnest anxiety to trade the Hartman notes to plaintiff for his equity in the Jemison land, and.the by-talk and exaggeration indulged in by them, as to the relative values of the Matzick and Hartman notes, were not permissible under the best rules of fair dealing. But, unless the same directly induced plaintiff to forego a personal examination of the lands covered by the Hartman mortgages, or to forbear inquiry which he would otherwise have made, an action for fraud and! deceit could not be predicated thereon. We do not think plaintiff in this case was so influenced. It is worthy of notice that at all times during the entire negotiations plaintiff acted for and on behalf of himself, without the intervention of any third party as counsellor or otherwise. He-was a man of mature years, a farmer, and dealing entirely in agricultural land-, concerning which he is supposed to have possessed ample knowledge. In all probability he felt capable- and competent to- protect himself in any of the transactions had with defendants. If, in such dealings, he was lacking in common prudence and caution, the'law cannot relieve him from the results following the unfortunate bad judgment exercised by him in his contractual relations with the defendants, in the absence of a clear showing that the exercise of such judgment was the direct result of palpable fraud or trickery practiced upon him by defendants. From the amounts of the mortgáges and values placed upon the lands herein involved it would appear that such lands carried decidedly inflated values, but plaintiff will be presumed to have given this matter some consideration before investing his money in the first instance.
In addition to our views as hereinbefore expressed, there is another reason why the judgment of the trial court must be *283 reversed. The action, as we have already said, was one based on fraud and deceit, and the judgment sounds in damages only. It is certain that the trial judge, in arriving at the damages to be awarded, adopted as the measure thereof the amount paid out by Drake as the purchase price of lands which he bought and paid for before the alleged fraudulent representations, upon which suit is brought, were made. Neither the value of the Hartman notes nor the value of the Matzick notes was considered in determining the quantum of damages, and the judgment cannot be sustained, because there is no competent evidence upon which, under this complaint, such judgment could be predicated. If it be urged that representations were made by Everist, at the time of the negotiations between himself and Drake, looking to' the exchange of the latter’s equity in the Jemison land for the Matzick notes, to the effect that the Matzick notes were good, then, inasmuch as that transaction was entirely between Everist .and Drake, neither Vastine nor the investment company can be held in this action for the representations of Everist, made at that time.
We have given consideration to the demurrer filed by defendants, challenging the complaint on the ground that no cause of action is stated, and while there may be some question as to its sufficiency, we prefer to decide the- case on its merits. Upon consideration of the entire case we are convinced that the evidence is insufficient to warrant the judgment rendered. It is therefore reversed and remanded for new trial, with instructions to the District Court to permit the respective parties to amend their pleadings as advised.