No. 9642.

MADSEN v. CARPENTER.

FRAUD—*False Representation.* One offering farm land for sale, represented to a proposed purchaser that a certain irrigating district had a feasible project, and would be able to apply water to the latter. *Held* not a false statement of any *fact* past, present, or to come, and affording no ground to vacate the purchase.

*Error to Saguache District Court, Hon. Jesse C. Wiley, Judge.*

Mr. J. ELZIA JOHNSTON and Mr. JAMES P. VEERKAMP, for plaintiff in error.

Mr. JOHN I. PALMER and Mr. S. M. TRUE, for defendant in error.

Mr. Chief Justice Garrigues delivered the opinion of the court.

IN August, 1913, defendant in error, Miles G. Carpenter, a farmer from Sarpy County, Nebraska, came to Moffat, Saguache County, in the San Luis Valley, for the purpose of examining and buying land, if it suited him, and moving to Colorado. After spending some ten days looking at land, he entered into a contract with Andrew Hansen, through the latter's agents, to buy a tract near the town of Moffat, at $35.00 per acre, amounting to $5,600.00, which contract, as far as material, is as follows: "Moffat, Colo., Sept. 1, 1913. Received of M. G. Carpenter of Sarpy County, Nebr., the sum of $600.00, as forfeit and part payment on purchase of the following described real estate * * *. The total price to be paid for said above described real estate is $5,600.00, and is to be paid as follows: $600.00 receipted for hereby; $1,800.00 March 1, 1914; $1,600.00 March 1, 1915; $1,600.00 March 1, 1916 interest payable annually at 6 per cent. Title to be good; and a good and sufficient warranty deed to be executed and delivered by Andrew Hansen, his heirs or assigns, on or before March 1, 1914, together with a complete abstract of title. If the title is good and M. G. Carpenter does not make the payment of said balance of $1,800.00 on or before March 1, 1914, then the payment of $600.00 is to be forfeited as partial liquidated damages. If this title is not good and cannot be corrected within a reasonable time, then the payment of $600.00 is to be returned to said Carpenter. Possession to be given March 1, 1914."

Carpenter took possession of the premises, and, March 1, 1914, made the cash payment of $1,800.00, and executed two promissory notes for $1,600.00 each, one payable March 1, 1915 and the other March 1, 1916, secured by trust deed, and Hansen deeded him the land.

April 2, 1915, Carpenter brought this suit to rescind the contract and to recover the $2,400.00 paid thereon, and to cancel the notes representing the deferred payments, and tendered a deed conveying the land back to Hansen. Pending the trial defendant died and his administrator was substituted.

The complaint alleges that plaintiff was a resident of Nebraska, not familiar with irrigation, and ignorant of the value and productiveness of lands in the San Luis valley, which matters were all known to defendant; that, to induce him to purchase the tract, defendant falsely, fraudulently and knowingly represented to plaintiff that it was a number one farm worth $35.00 per acre, and as good land as any in that vicinity, and that no land of that quality in the locality could be purchased for a less amount; that on account of its being situated within the boundary of the Moffat irrigation district the land would be entitled to receive sufficient water from the district for irrigation; that the district had developed sufficient water to properly irrigate all the land and had purchased machinery with which it would develop additional water, and that the alkali on the land was a good fertilizer; that these statements were false and known by defendant to be untrue when he made them, and were made to deceive plaintiff; that the value of the land did not exceed $15.00 per acre and that plaintiff relied upon the false statements and would not have contracted to purchase the land had he not believed them to be true.

The court found the issues for plaintiff, and entered a judgment and decree ordering that the contract be cancelled and rescinded, and the sale held for naught, and that plaintiff recover from defendant the $2,400.00 paid thereon, with interest, less $500.00 as rental, and that the two notes of $1,600.00 each be cancelled and delivered to plaintiff.

Garrigues, C. J., after stating the case as above.

Plaintiff's cause of action is predicated upon alleged fraudulent representations regarding the water rights and the status of the Moffat irrigation district which it was supposed would furnish the land with water for irrigation; and the quality, character and value of the land. The second point might be ignored as immaterial because plaintiff testified that, while the soil was not as represented, still the failure to get the water was the only thing about which he complained; that, if the district had furnished the water as

represented, he would have been satisfied and gone ahead with the deal. The tract was pasture and hay land, and had never been farmed or irrigated and no water was bargained for, promised, conveyed, or went with it. Plaintiff was told and understood that no water went with the land, and that he was purchasing no water right, and that the water would have to come from the irrigation district which had just been formed, and was installing a pumping proposition. Plaintiff testified in substance that the agent represented to him in August, 1913, that the following year, that is 1914, the irrigation district would have its system so developed that he would be able to get water for the land, and that he would not have executed the contract and bought the land if he had not thought so; that he intended to farm the land when he bought it, but soon saw he could not get any water and never plowed any of it up; that the agent said that the plan was feasible, and that the district would be able to furnish water for the land; that it had a pumping plant six miles north of town, and a water proposition on Crooked creek that it was going to use as soon as they could get hold of it; that the pumping plant would develop sufficient water; that the most of the talk was as to the source of the water; that the agent represented that the irrigation district had water for the land from the pumping plant, and took him out to the plant to examine it before he signed the contract; that he never made any demand for the water, and didn't think he had to because he understood the land in the district was taxed, and they were bound to furnish the water without its being demanded; that the agent showed him the pumping plant as a proposition that was going to be installed; that he saw where they had been pumping water but did not measure it; that no one showed him any water that was for, or that went with, the land, or that could be used upon it; that there was no ditch conveying water to the land; that the irrigation district was to make a ditch and put it through to the land; that the agent brought a local newspaper along and read an article as to when they were going to install the machinery for the

pumping plant, and in August, 1913, took him to interview the board about it and the board told him they had a contract with the Austin people for two dredges, and would start operations in the spring of 1914, as soon as the frost was out; that they showed him some ditches already made from the pumping plant to other land in south of Moffat; that the agent represented that the water they had already developed would hold us fellows that were coming in there up until they had the other water going; that he went to see the board personally because he wanted to find out from them about the water source and that he found out about it by inquiring at Moffat; that he never plowed up any of the ground or attempted to put it in crops because after he had the land a little while he found out he was not going to get the water; that he would have gone ahead if the district had furnished the water for the land the following spring, and would have been satisfied with the deal; that the failure to get the water was the only thing about which he complained, although the soil was not as good as represented; that the agent induced him to interview the board about the water and went with him but that nobody represented to him that there were any ditches built from which he could irrigate the land, but that the district was supposed to put them in, and represented that it would be done.

From reading the whole evidence given on the trial, it is plain that defendant's agent only expressed an opinion that the proposition was feasible, that the district would be able to supply water for the lands lying thereunder, and that defendant would be able to get water for the land from the district, which was not a false statement as to a past, present or existing fact. As a matter of fact the water system was not feasible but was a failure, and plaintiff, as soon as he found this out, had the land withdrawn from the district and never paid any district taxes, and the district subsequently was dissolved.

As to whether it was a valuable piece of land, or would grow anything that the climate would grow, or as good crops as could be grown in that locality or climate, or grow

any crops at all, or whether it was good soil or poor soil, or was worth $35.00 an acre, were mere expressions of opinion. Plaintiff had been a farmer all his life and came to Colorado and spent a week or ten days personally visiting the locality and conversed freely with the farmers and people about Moffat, and stayed all night there with an old farmer friend from Nebraska for the purpose of finding out about the lands, and went all over and around the land and dug holes in it with a spade and investigated personally the character of the soil, and conversed fully with the officers of the irrigation district, learned their plans, and visited their plant before he signed the contract. He came back again to Colorado on the 15th of February, 1914, and made another thorough investigation both of the land and water system before completing the deal.

Under such circumstances the finding, judgment and decree cannot stand. *Muir v. Pratt*, 18 Colo. App. 363, 369, 71 Pac. 896; *Everist v. Drake*, 26 Colo. App. 273, 283, 143 Pac. 811.

Judgment reversed and cause remanded with directions to dismiss the action.

Mr. Justice Teller and Mr. Justice Burke concur.