Thomson, J.
The judgment helow was for the defendants, and the plaintiff has brought the case here by writ of error.
The complaint alleged that on the 6th day of May, 1899, the defendant, Noah R. Pratt, represented to the plaintiff that a friend of his whom the plaintiff afterwards found to be his son, Arthur A. Pratt, had a valuable piece of land situate in Bijou Basin, in Elbert county, which he held in virtue of a valid, homestead filing; that the land was improved with a dwelling house and some fencing; that water could be found on the land at a depth not exceeding thirty feet from the surface; that all kinds of crops could be raised on the land without irrigation; that he could induce his friend to relinquish his filing on the land for $250; that the relinquishment was worth that sum; that the plaintiff could then make a filing of his own in the United States land office in Denver, and become the owner of the land; that, believing the representations, to be true, and not knowing to the contrary, he was induced by the defendants, Noah E. and Arthur A. Pratt, to deposit with the defendant, W. H. Davis, $250, Arthur A. Pratt at the same time depositing with Davis a pretended relinquishment of his homestead filing, the condition of the" deposits being that Davis should hold "them until certain papers should arrive from the east, upon the arrival of which he should turn the relinquishment over to the plaintiff, and the money to.the defendant, Arthur A. Pratt. It was further averred that the representations made by NoahR. and Arthur A. Pratt were knowingly and *365 intentionally false; that the land was not in Bijou Basin; that all kinds of crops could not be raised on the land without irrigation; that what was represented as a dwelling house, was a ‘dug-out”; that there was no fencing on the land; that water could not be obtained within thirty feet by sinking a well; that Arthur A. Pratt did not have a valid or subsist-' ing homestead filing on the land; that his filing was made on the 12th day of January, 1898, and that he never took up his residence on the land, or made any improvements upon it, and that long prior to the day when he made the pretended relinquishment, he had wholly abandoned it, having therefore on the day of the relinquishment nothing to relinquish; that as soon as the plaintiff discovered the falsity of the representations, he notified the defendant Davis to return to him the money he had deposited, and to the other defendants the relinquishment; and that he also notified the other defendants that he withdrew from the trade, and demanded of them a release to him of the money, but that Davis refused to deliver him the money, and the other defendants, notwithstanding their fraud and wilful deceit, laid claim to its ownership. Judgment was demanded against all of the defendants for $250, and a finding and judgment a"gainst the defendants Pratt as for fraud and wilful deceit.
The defendant,.Davis, answered that he held the $250, mentioned in the complaint as custodian only; that he had no interest in the money or the controversy ; and that he was ready and willing t‘o pay the money over to the person or persons to whom the court might award it.
The answer of the defendants Pratt admitted that certain of the representations alleged to have been made by the defendant, Noah R., were made by him; admitted the deposit with Davis of the $250 and the relinquishment, upon the conditions stated in the *366 complaint; and denied the other allegations of that pleading. This answer alleged further that the plaintiff, before depositing his money with Davis, and before the execution of the relinquishment by Arthur ■ A., made a personal examination of the entire tract of land concerning which he was negotiating, informing himself fully respecting its capabilities, and the improvements upon it, and with the knowledge thus acquired, offered to purchase the relinquishment for $250; that the relinquishment, and all papers necessary to a homestead entry by the plaintiff for himself, were thereupon prepared and submitted to the receiver of the land office, who approved them; that, however, upon being informed that the plaintiff was not born in the United States, but that his father had been naturalized, the receiver required a certified copy of his father’s naturalization papers before permitting the entry by the plaintiff; that thereupon the money and the relinquishment were placed in the hands of the defendant Davis, with instructions, as soon as the naturalization papers should arrive, to pay the money to Arthur A., and deliver the relinquishment to the plaintiff; and that a certified.copy of the naturalization papers had long since arrived,
The replication, except as to the visit to the land and the presentation of the papers for entry by the plaintiff to the United States land office, was a denial.
The plaintiff testified that the defendant, Noah R., told him that the land was in Bijou Basin; that he went with one of the Pratts to the land and examined it, giving a description of its surface appearance ; that he went through the building styled a. “dug-out,” which he described as being constructed of logs and covered with a roof; that he asked Pratt how deep he would have to go to find water, and was answered, about thirty feet; that Pratt told him he could raise all kinds of crops on the land, sped *367 fying, however, only, oats, corn and potatoes; that he then returned to Denver, and concluded the bargain; that his money and the relinquishment of Arthur A. Pratt were deposited with Davis to await the arrival of the naturalization papers; that a day or two afterwards, taking a span of horses and a wagon, with a quantity of provisions, and some articles furnished by one of the Pratts, he undertook to go to the land, but before reaching it lost his way, and returned to Denver, and made demand for his money, for the expressed reason that the land was not what it had been represented to be. He further testified that the land was not in Bijou Basin; and said that he had sent for and received the naturalization papers.
Aside from himself, there was but one witness for the plaintiff. This witness testified that he had lived for four years about two and-a quarter miles from'the land in question'; that a crop could not be raised in his neighborhood every year, at least not on his land; that he raised two crops while he was there; and that the wells at different places around him were from thirty to one hundred and fifty feet deep.
The defendants Pratt introduced a number of witnesses. It was proved by them that Arthur A. had constructed- the dug-out, and placed a certain ¿mount of fencing on the land; that while wells had been sunk on adjacent land, none had been sunk on that land, and it had not been cultivated; that abundant crops of sorghum, corn, oats, wheat, potatoes and alfalfa grew in the immediate neighborhood without irrigation; that water had been obtained on adjoining land at a depth varying from twenty-one to forty feet; and that it could probably be found on the land in question within thirty feet.
A jury had been empanelled to try the case, but, *368 áfter hearing the evidence, the court discharged them, holding that there was no question of fact for them to pass upon, and thereupon gave its judgment to the defendants.
The principal point made for the plaintiff is that the contract was verbal and executory; that it could therefore be rescinded by either party at his pleasure and as a matter of right; and that the plaintiff did rescind it. It is unnecessary to discuss the effect of the escrow, or inquire into the right or power of either party to revoke it without the consent of the other, for the complaint was not constructed, nor the case tried, upon the theory of the existence of such right or power. The complaint charged that the purchase by the plaintiff was induced by false and fraudulent representations made by the Pratts, and a finding of wilful deceit was asked, which, if made, would have subjected their persons to execution upon the judgment. The- sole ground upon which the plaintiff based his right to a return of his money, was the deceit by means of which he alleged himself to have been inveigled into the transaction. What the representations were, how they accorded with the facts, and whether the plaintiff relied upon them, were the only questions presented by the pleadings; and if upon those questions the evidence which was produced left no room for a difference- of opinion, there was nothing for the jury to consider, and the court did not err in withdrawing the case from them.
Now we are unable to discover any particular in which the charges, or any of them, against the defendants made by the complaint, were sustained by the evidence. Whether the locality in which the land lay was called Bijou Basin or Bijou Bottom, is immaterial. What difference in meaning there may be between the terms Bijou Basin and Bijou Bottom, we have not been advised; but the plaintiff saw and in *369 spected the land, and knew its location, before he concluded the bargain. He also knew the amount and nature of the improvements upon it, and knew that it had not been cultivated. The statement of one of the defendants that certain kinds of crops could be raised upon it, was, in the absence of experiment, necessarily only an expression of opinion, as was also his estimate of the depth at which water might be obtained. The expression of an opinion is not the statement of a fact; but from the evidence of what had been done on adjoining lands it seems clear that these opinions had-a substantial basis, and were fully justified. It is said that the homestead entry by Arthur A., was not, at the time of the transaction, a valid and subsisting claim. We find nothing in the evidence to support the assertion; but every fact in connection with it was open to investigation by the plaintiff. There was no concealment, and no effort at concealment, by the defendants Pratt, or either of them, of any fact connected with the land or the title; and in so far as the evidence affected their statements, or the statements of either of them, it sustained them. The judgment should be affirmed.

Affirmed.