[No. 7722.]

## PONDER v. ALTURA FARMS COMPANY.

1.  FRAUD—*Ratification.*  One who having been induced by fraudulent and false representations to enter into an executory contract, insists upon the performance thereof after he has full knowledge of the facts constituting the fraud, thereby ratifies the contract, condones the fraud, and is barred of an action for the damages resulting therefrom.  (522)

The ratification takes effect from the date of the contract and purges it of the fraud.  (524)

2.  ——*Without Damage,* not actionable.  (527)

3.  MAXIMS—*Volenti non fit injuria,* applies to all loss resulting from the voluntary execution of a non-obligatory contract, with full knowledge of the facts which render the contract unenforceable.  (527)

*Error to the Denver District Court.*—Hon. H. C. RIDDLE, Judge.

Messrs. MELVILLE, SACKETT & CALVERT, for plaintiff in error.

Messrs. DOUD & FOWLER, and Mr. C. H. WINGENDER, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court.

This is an action by the plaintiff in error, to recover in damages for fraud and deceit alleged to have been practiced by the defendant in error, in inducing the former to enter into a contract for the purchase of a tract of land.

The Altura Farms Company was the owner of several hundred acres of land which it had divided and platted into ten-acre tracts.  The contract in question was for one of these tracts, and purports to have been executed on the 16th day of August, 1909.  In this the

agreed purchase price was $2000, to be paid as follows: $10 cash in hand; $40 on the first day of September, 1909, and $10 on the first day of each succeeding month until the entire purchase price was paid; all deferred payments to bear interest at the rate of six per sent per annum. The allegations in the complaint as to the fraud, were as follows:

"That plaintiff was induced to enter into said contract by the false and fraudulent representations made by defendant company through certain advertisements, including those in 'The Rocky Mountain News' and 'The Denver Post,' stating in substance that these tracts were located seven miles due east of the capitol building; that the purchase price included a full perpetual water right; that the ditches were all completed, and the soil guaranteed to be the best in Colorado; and that in other advertisements it was stated in substance that every tract offered for sale was under a ditch and well irrigated, and the water rights were perpetual; that with each acre sold was delivered one right equal to an acre-foot of water, which would cover all needs for all times and for every kind of crop.

That, in addition to said advertisements, he was further induced into said contract by H. Pike, assistant manager in the office of defendant, to whom he had stated that he knew practically nothing about the value of land, or the amount of water necessary to irrigate the same, and who told plaintiff that defendant company owned said lands and had ample water for irrigating all kinds of crops and trees that might be planted thereon; that the ditches were all completed, and Tract No. 48 lay under one of them; that, in addition to a plentiful supply of water from the High Line Canal, defendant also owned at said time a reservoir with eighty thousand acre-feet of water stored therein which would be drawn upon, and water furnished to purchasers of said lands and water, including Tract No. 48, whenever asked for and needed by them for irrigation; that defendant had sufficient water, if it did not rain for three years, to irrigate all the lands sold by it; that the beauty

of defendant's irrigation system was that the purchasers of water rights could get water at any time of the day or night every day in the week; that said reservoir held thirty thousand acre feet more than they intended to sell, and that the water rights were perpetual and consisted of one acre foot for each acre of ground, which would cover all needs for all time; that Altura Farms, including Tract No. 48, were located seven miles from the capitol building in Denver and were within two miles of the end of the car line at Aurora; that the tramway company had a franchise to build its line out to Watkins, and in order to hold it would be compelled to build as far as Altura by June, 1910; that the soil on said lands was from three to ten feet in depth, and that the best drinking water on earth could be obtained on said farms, including Tract No. 48, at from thirty to forty feet in depth; that Tract No. 48 was particularly adapted to the raising of all kinds of fruit, grains and vegetables, particularly potatoes; that said Altura Farms were worth more than two hundred dollars an acre, and similar lands to these were being, and had been, sold at an equal distance from Denver, for from three hundred dollars an acre and upwards; that plaintiff by cultivating said lands would be absolutely sure of netting himself at least two thousand dollars on said tract, because the certainty of the water right would insure a full crop each year; and that if through sickness or a failure of crops he could not meet his payments, the same would be carried over for him."

It was further alleged that these representations were false and known to be so by the Altura Farms Company, and that the plaintiff was ignorant of such matters and wholly relied on the alleged false representations so made.

The answer was a general and specific denial of the frauds charged. The trial court at the close of plaintiff's testimony directed a verdict for the defendant.

Inasmuch as the case must be determined upon another question, it is not necessary to enter into a dis-

cussion and determination of the many interesting questions as to whether or not the charges of fraud in the complaint, or any of them, constitute actionable fraud, or whether in such case the proof is sufficient to justify a finding for the plaintiff.

It appears that plaintiff inspected the land at least three times before entering into the contract of purchase, twice he was taken out from the city by the defendant in an automobile, and once he walked out, accompanied by his wife. In the spring of 1910, he planted the tract or a part of it, to crops and trees and by reason of it being a dry year, and because of the shortage in water for irrigation, the crops failed and many of the trees died.

We think that the contention of the defendant in error, to the effect that if the fraud be admitted, and, if after full knowledge of the facts alleged, to constitute the fraud, the plaintiff insists upon a performance of such an executory contract, he thereby ratifies the contract and condones the fraud, and for such reason is barred from a recovery for damages on account of the fraud, is well sustained by the authorities.

The following admission by the parties is found in the record:

"That it is admitted by both plaintiff and defendant that the payments called for by the contract between The Altura Farms Company and Mr. Ponder have been continuously made up to the time of the bringing of this suit and until now all payments have been continued and made by the plaintiff and accepted by the defendant; that on the first of November, 1910, Mr. Ponder made an application to the defendant for extension of the time for the payment of certain interest, which was then due, which time was extended from November 1st to December 30th, at the request of the plaintiff, and granted by the defendant; that the extension was evidenced by check executed and delivered on the 1st of November, but which bore date, the 30th of December, 1910, that shows the extension of the time of payment."

The complaint was filed on the 7th day of December, 1910. Plaintiff must have had full knowledge of all the facts constituting the alleged fraud at that time but he insisted on making the payments, and did so up to that time. The judgment was rendered September 22d, 1911, and the stipulation shows that he had voluntarily made all·payments due under the contract at that date.

It further appears from the stipulation that just prior to the filing of his suit, plaintiff made an application for extension of time for the payment of certain interest, which was granted, and which he paid December 30th, 1910, and after the suit was filed.

The plaintiff testifies that he began his investigation of the water supply in the spring and summer of 1910, and indeed, it is not contended that he did not have knowledge of the alleged fraud long prior to the institution of the suit and that after such knowledge was obtained, and continuously since that time has made all payments on the contract as they became due, and insists on so doing,. and in the full performance of his contract. It is quite clear also, that at the time of the trial he was in possession of the land and claiming the right thereto under the contract which he claims was induced by the alleged fraud.

It is the settled rule that one who has been induced, through fraud to enter into a contract has the election either to rescind, tendering back that which he has received, or affirming the contract he may have his action for deceit to recover damages. But the, affirmance so referred to can have relation only to the completed transaction, and that if he become advised of the fraud perpetrated upon him in time to recede from his agreement, and yet, when with knowledge of the falsity of the representations which has induced the contract, elects to perform, and clearly manifests his intention to abide by the contract, he condones the fraud and may not recover. It has been held that the contract, being against conscience because of the fraud, is not obligatory upon him if he' so elects; but if, when fully informed of the

fraud, he voluntarily confirms, ratifies and performs, and exacts performance of the contract, he condones the fraud, and that such ratification, like the ratification of an unauthorized act of an agent, relates to the time of the contract, confirming it of its date and purging it of fraud. Further, that with respect to an executory contract, one may not after the knowledge of the fraud, continue to carry it out, exacting performance from the other party to it, receive its benefits, and still pursue an action for deceit; and this because continued execution with knowledge of the fraud, signifies the ratification of a contract voidable for fraud, and so condones the fraud.

This was the doctrine announced by the United States Circuit Court of Appeals in the case of *Kingman & Co. v. Stoddard,* 85 Fed. 740, 29 C. C. A. 413. In the opinion in this case will be found a most exhaustive review of the authorities upon this question. It was there said:

"With respect to an executory contract voidable by reason of fraud, the defrauded party, with knowledge of the deceit practiced upon him, may not play fast and loose. He cannot approbate and reprobate. He must deal with the contract and with the wrong doer at arm's length. He may not, with knowledge of the fraud, speculate upon the advantages or disadvantages of the contract, receiving its benefits, and at the same time repudiate its obligations.— *Grymes v. Sanders,* 93 U. S. 55, 62 [23 L. Ed. 798]; *McLean v. Clapp,* 141 U. S. 429, [35 L. Ed. 804] 12 Sup. Ct. 29."

In further discussing the rule and the reasons for it, the court said:

"The thought is well expressed in *Solway v. Fogg,* 5 Mees. & W. 83-85, where Lord Abinger, C. B., said: 'Secondly, it was clear upon the evidence that the plaintiff had full knowledge of all that constituted the fraud in this case either before or during the work, and as soon as he knew it he should have discontinued the work and repudiated the contract, or

he must be bound by its terms.' And Parke, B., said: 'I also think that upon discovering the fraud (unless he meant to proceed according to the terms of the contract) the plaintiff should immediately have declared off, and sought compensation for the by-gone time in an action for deceit. Not doing this, but continuing the work, as he has done, he is bound by the express terms of the contract, and, if he fail to recover on that, he cannot recover at all.' And why not? Fraud is indeed odious, and should be condemned; but why should the defrauded party, with knowledge of the wrong perpetrated upon him, be permitted to speculate upon the wrong, enhancing the injury if the speculation prove disastrous? Why should the wrongdoer be mulcted in damages which the defrauded party has with knowledge of the fraud brought upon himself? Why should the latter be permitted to refer the injury which he has incurred with his eyes open to the original wrong by which he was induced to execute a contract which could not be enforced against him? Suppose, for example, that one, through false representations, be induced to enter into contract to furnish the plant necessary to the operation of a mine, and to agree to expend in its development, say not less than $100,000 per annum for the term of five years; there is neither sense nor justice in holding that, after discovery of the fraud, he may continue to carry out the contract, to advance large sums of money in its performance, and, when disaster has come upon the enterprise, he may look to the original wrongdoer for reimbursement for the loss voluntarily incurred. Cases may possibly arise where the defrauded party may, by reason of the wrong, be unable to recede from his situation without prejudice. A proper rule will doubtless be found to govern such cases when they arise. But where he can safely retreat we think he should, as Judge Bronson expresses the thought, 'decide whether he will stop short or go on.' "

In *Grymes v. Sanders*, 93 U. S. 55, 23 L. Ed. 798, it was held that

"Where a party desires to rescind, upon the ground of mistake or fraud, he must, upon the dis-

covery of the facts, at once announce his purpose, and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be as conclusively bound by the contract, as if the mistake or fraud had not occurred.''

This doctrine was reiterated and the rule reaffirmed in *McLean v. Clapp, supra.*

The instant case cannot be said to be stronger than that stated by Judge Lurton in the case of *Simon v. Goodyear Metallic Rubber Shoe Co.*, 105 Fed. 573, 44 C. C. A. 612, 52 L. R. A. 745;

"The case for the plaintiff, in its most favorable showing, may be thus stated: 'The defendant has deceived and beguiled me into a contract which I would not have made but for reliance upon the wilfully false statements of its agent, made to induce its execution. I discovered its deceit after beginning its execution. I could have stopped then, for the engagement was not obligatory, and by far the greater part of my contract was still executory. If I had stopped purchases and deliveries when I acquired full knowledge of the falseness of its representations, my loss would have been limited to the difference between the price I had paid for the rubber waste I had theretofore delivered and the price I received under the contract, and this loss I might have recovered in an action for deceit. But when I discovered the deceit I sought to be relieved in whole or in part from its further execution, and appealed to the defendant to make concessions. The defendant denied the deceit and demanded full performance, granting me only an extension of time for performance. In this situation, with full knowledge of the deceit, I accepted this concession in respect of time of performance, but notified it that I would hold it liable for the loss I should incur in buying to fill my contract when it should be fully performed, and went ahead and executed the contract according to its terms. Defendant has paid me the price it agreed to pay, but I now demand the damages I have incurred in carrying out the contract according

to its terms.' There can be but one answer to the case thus stated. The contract was not obligatory by reason of the deceit by which it was procured. If it had been fully executed before full knowledge of of the deceit which made it non-obligatory, the plaintiff's remedy would have been in an action for the deceit. In such action the measure of damages would not be the value of the contract if the representations which induced it had been true, but the loss which was incurred by reason of its execution. What the plaintiff might have gained would not have been recoverable, but only the loss which he sustained by its actual execution.''

After stating the rule of damages in such a case, that great jurist further continuing, said:

''This being the rule of damages in an action by one who has been fraudulently induced to make either a contract of sale or purchase, it must follow that if one, after full knowledge of the fraud and deceit by which he has been induced to make a sale of property, goes forward and executes it notwithstanding such fraud, the damage which he thereby sustains is voluntarily incurred. The maxim *Volenti non fit injuria* has application to all loss resulting from the voluntary execution of a non-obligatory contract with full knowledge of the facts which render it voidable. Fraud without damage is not actionable. If the fraud be discovered while the contract is wholly executory, the party defrauded has the option of going on with it or not, as he chooses. If he executes it, the loss happens from such voluntary execution, and he cannot recover for a loss which he deliberately elected to incur.''

In *Hunt v. Hardwick* Co., 68 Ga. 100, the court said:

'' Apart from the evidence submitted on the part of the plaintiff below, it must be borne in mind that this contract, which it is alleged was induced by fraud and false representation in two very material facts, was, so far as the record shows, not complained of when these false representations were discovered, but with full knowledge of their falsity,

if they existed, defendant below went forward and made payments on said note years after it matured and thus seemingly acquiesced in and ratified the alleged contract made. It is a well settled rule that a party who is entitled to rescind a contract on account of fraud or false representations, when he has full knowledge of all the material circumstances of the case, if he freely and advisedly does anything which amounts to the recognition of the transaction, or acts in a manner inconsistent with its repudiation, it amounts to acquiescence, and though originally impeachable, the contract becomes unimpeachable even in equity. *Kerr on Fraud and Mistake,* 301-2-5; *Cozart v. Georgia Co.,* 54 Ga. 384; *Gamble v. Knott,* 48 Ib. 109; *May v. Memphis Co.,* 40 Ib. 190.''

It was held in *St. John v. Hendrickson,* 81 Ind. 350, that:

''Where one is induced by fraud, in the form of false representations, to enter into a contract, and afterwards, upon obtaining full knowledge of the fraud practiced upon him, and of all material facts, declines to repudiate it, and expressly ratifies it, he can neither rescind nor maintain an action for damages.''

Upon the foregoing authorities and upon principle we we think the acts of the plaintiff in this case constitute a waiver of the alleged fraud, and an abandonment of the claim for damages. At the institution of this suit the plaintiff had paid but $190 of the sum of two thousand dollars agreed in the contract. It was his clear duty at that time, after full knowledge of the acts of fraud, if there was fraud, to have abandoned the contract and to have brought the proper action for the damage he had then sustained. He cannot insist upon the continuance of a contract covering a long future period and at the same time claim damages for the fraud that induced it.

In the language of some of the authorities he must either stop or go on with the contract. It is manifestly unjust that he should be permitted to do both.

We have not overlooked the rule stated by Judge Cooley, and adopted in 20 Cyc., 93:

"That acts done in affirmance of the contract can amount to a waiver of the fraud only where they are done with full knowledge of the fraud and of all material facts, and with intention clearly manifested to abide by the contract and waiving all right to recover for the deception."

For it is very clear that the acts of the plaintiff were within that rule. The plaintiff in error admits that there is no Colorado case directly in point but cite the following as tending to support his contention: *Lilley v. Randall,* 3 Colo. 298, 300; *Herfort v. Cramer,* 7 Colo. 483, 489, 4 Pac. 896; *Wheeler v. Dunn,* 13 Colo. 428, 445, 446, 22 Pac. 827; *Butler v. Rockwell,* 14 Colo. 125, 139, 23 Pac. 462; *Florence O. & R. Co. v. McCandless,* 26 Colo. 534, 537, 58 Pac. 1084. We have examined these cases and find nothing which appears to be in conflict with the principle here announced.

The judgment is affirmed.

MUSSER, C. J., and GARRIGUES, J., concurring.