## No. 8659.

### WIDMAN v. BARRY.

1. FRAUD—*Waiver.* Action for fraud inducing plaintiff's conveyance of certain lands. In the transaction plaintiff receives certain promissory notes of defendants. Though fully advised of the alleged fraud within two or three days of the conclusion of the transaction, plaintiff retained these notes and collected them. *Held* a waiver of the alleged fraud.

2. TRIAL—*Directed Verdict.* Where upon the plaintiff's own testimony, or that of the defendant uncontradicted it is clear that the action is without merit it is the duty of the court to direct a verdict for defendant.

*Error to Denver District Court, Hon. Charles C. Butler, Judge.*

Mr. G. K. ANDRUS, for plaintiff in error.

Mr. THOMAS M. MORROW and Mr. M. B. WELLINGTON, for defendant in error.

Mr. Justice Hill delivered the opinion of the court:

THE plaintiff in error instituted this action. The complaint contained two counts. The first was to recover $3,000.00 damages, alleged to have been suffered through the fraud and deceit of the defendant in securing the exe-

cution and delivery by plaintiff of two deeds to lands in Morgan and Weld counties, under the promise that he would hold the deeds until he got for her from the purchaser the sum of $6,450.00 in cash. She alleges that he got a much greater amount but only paid her $5,000.00, and then only after she had incurred the expense of employing an attorney to collect it. The second count alleges the conversion by defendant of certain water rights in the Riverside Reservoir, owned by plaintiff, though in defendant's possession, and which she alleges he sold, and converted the money to his own use, with intent to cheat and defraud her, to her damage in the sum of $2,000.00. A body execution was prayed for.

The defendant denied all fraud and deception; admitted the receipt of the deeds, and possession of the water rights; alleged that the lands had already been incumbered to him in the sum of $15,000.00 to secure moneys advanced to the plaintiff and members of her family in its development, which notes and mortgages he had transferred to others, who were demanding payment, etc., which the plaintiff and the other members of her family, who were interested in it, were unable to do. For these reasons he alleges that it was agreed between them that plaintiff's equity in the land and the water rights was to be traded to other parties, who would and did assume the payment of this incumbrance, and that plaintiff was to be paid for her equity, and was paid, with her knowledge and consent, with $50.00 in checks and the balance in notes of the defendant, which she thus accepted, one in the sum of $1,500.00, the other for $4,950.00; that thereafter she placed these notes in the hands of an attorney for collection, and that the defendant paid the $1,500.00 note in full to said attorney, and the further sum of $3,500.00 to apply on the larger note, and with her consent gave her a new note for the sum of $1,492.00 in payment for the balance due on the larger note, which she received as such, and cancelled and surrendered to defendant the notes; that the agreement between them concerning the entire transaction was in writ-

ing. and signed by them at the time.    He also plead a waiver of the alleged tort, election of remedies, etc.

At the close of plaintiff's testimony, a non-suit was granted.    In passing upon the motion the court, among other things, in substance, said that while the plaintiff's evidence showed *prima facie* fraud had been committed, that when plaintiff discovered this alleged fraud (which pertained to the water rights, and the fact that she was to get cash instead of the notes) it was her duty to have done one of two things, viz: either repudiate the contract, and return the notes to defendant, or offer to do so, and sue him in tort for the wrong committed, or, to ratify the contract and collect the notes; that she could not do both; that her testimony showed that upon discovering the fraud, she elected to ratify the contract, and collect the notes; that after knowing all of the facts, she could not thereafter bring this kind of an action; that she waived her right to do that by collecting $5,000.00 on the notes, and taking a new note in the sum of $1,492.00 for the balance that was due upon the first notes, and per the terms of the written contract between them covering the entire transaction. This ruling is the error complained of.

A careful reading of the entire record convinces us of the correctness of this ruling.    The pleadings admit the existence of the prior notes and mortgages upon the land, as alleged by the defendant.    The plaintiff's testimony discloses that the defendant (whom she had known for a long time) came to her home about January 1, 1911, and told her that he had a sale for the land, and wanted her to sign the papers; that she declined to do so then or thereafter, until she had talked with her husband, who was up in the mountains; that she talked with her husband that night over the phone; that defendant returned to her home the next day with a notary, when she signed the contract between them calling for the disposition of the land and water rights, and payment to her of $50.00 in cash and the notes, as set forth in the defendant's answer; that she, at the same time, executed the deeds, and delivered them with the contract to the defendant, who gave to

her two checks for $25.00 each, and the two notes for the amount called for in the contract; that he also left with her a copy of the contract; that her husband returned to Denver two or three days after she had executed the contracts and deeds, when she showed him the checks, notes and her copy of the contract; that both she and her husband, after he had read the contract, were fully advised of its contents, and immediately thereafter went to the defendant and complained that such was not her understanding of the agreement between them, etc., and wanted him to agree to an arrangement in harmony with the plaintiff's version of what the real contract was; that the defendant refused to agree to such an arrangement, or do otherwise than confess his liability upon the notes and other matters contained in the contract; that he advised the plaintiff's husband (who was acting for her), at their first interview after the execution of the deeds and contract, that he had taken an apartment house, meaning for the equity is the land; also that the water rights were included in the transaction; that the husband accused him of telling him over the phone (when in the mountains) it was to be a cash deal, and the water rights were not to be included. This testimony discloses that within two or three days after the execution of the deeds and contract the plaintiff knew all the facts pertaining to the alleged deception and fraud, which she now claims was perpetrated upon her. Her testimony and that of her husband is to the further effect, that, when possessed of this knowledge, they employed an attorney to collect these notes; that the $1,500.00 note was, by the defendant, paid to said attorney in full, on June 3, 1911, who cancelled and surrendered it to the defendant and that the money was, by said attorney, turned over to the plaintiff, less his fees; that the defendant, at the same time, paid to said attorney to apply on the larger note the sum of $1,500.00, which money was likewise by said attorney paid to the plaintiff; that upon September the 6th, 1911, the defendant paid the said attorney to apply on the larger note the further sum of $2,000.00, at which date he gave to him a new note pay-

able to plaintiff for $1,492.00, due on or before March 6th, 1912, with interest at seven per cent. per annum, which payment and new note were accepted by said attorney as payment in full for the balance due on the larger note, which was, by the attorney, marked paid in full, and surrendered to the defendant; that said money, less the attorney's fees, together with the new note, were delivered to the plaintiff, and by her accepted as payment in full for said larger note, and that this latter note has been held by plaintiff or her present attorney ever since its execution.

The record fails to disclose when this suit was brought. The trial was commenced February 16, 1915. The testimony of plaintiff's counsel, who brought this suit and tried it, was to the effect that he was employed by her about a year before the trial; that he wrote the defendant a letter, after which defendant came to see him about the last $1,492.00 note; that defendant stated if he was sued he would be forced into bankruptcy, etc. The attorney further testified that if defendant had been good he might have sued him on the note, probably would; that he made this statement to show why he brought the suit, as he did, in tort. This testimony discloses that this suit was not brought until at least after February, 1914, which was over three years after the original transaction. Each of the original notes contained the following. "This note is subject to the covenants of a written agreement of even date between the maker and Dora Widman." To a certain extent this made them a part of the contract. The consideration involved in the contract on the part of the defendant was not alone the payment of $50.00, and the giving of the two notes, it provides that he should assume and pay, or cause to be paid, certain outstanding notes of Paul H. Widman (plaintiff's husband), Allie L. Widman (plaintiff's son), and plaintiff, also that the defendant would assume the $15,000.00 incumbrance on the land, and pay or cause it to be paid, releasing her from the payment of both principal and interest, etc. It contains other statements showing that it was a settlement of certain trans-

actions existing between them up to that date. There is no allegation in the complaint, or testimony, that the defendant failed to comply with any of these conditions named in the contract. When all of these facts are considered, it presents a clear case of waiver, and election to rely upon the contract and notes; when such an election is made, it is elementary that a party is bound by it:

*Ponder v. Altura Farms Co.,* 57 Colo. 519, 143 Pac. 570; *Cole v. Smith,* 26 Colo. 506, 58 Pac. 1086; *Schagun v. Scott Mfg. Co.,* 162 Fed. 209, 89 C. C. A. 189; *Negley v. Lindsay,* 67 Pa. St. 217, 5 Am. Rep. 427; *Schmidt v. Mesmer,* 116 Calif. 267, 48 Pac. 54; *Burne v. Lee,* 156 Calif. 221, 104 Pac. 438; *Kingman & Co. v. Stoddard,* 85 Fed. 740, 29 C. C. A. 413; *McLean v. Clapp,* 141 U. S. 429; 35 L. Ed. 804, 12 Sup. Ct. 29; *Campbell v. Newton et al.,* 152 Pac. (Okl.) 841.

The claim that the question of waiver or election is one of fact and for that reason should have been submitted to the jury, is not applicable. The testimony was that offered upon behalf of the plaintiff, the greater part of which was given by her. It was undisputed and of such a character that only one conclusion could be drawn from it. In such case, it was the duty of the court to act accordingly; there was nothing for the jury to determine; such has been the uniform holding in this jurisdiction:

*Stearns v. Hazen,* 45 Colo. 67, 101 Pac. 339; *Ponder v. Altura Farms Co.,* 57 Colo. 519, 143 Pac. 570; *Behrens v. K. P. Ry. Co.,* 5 Colo. 400; *Muir v. Pratt,* 18 Colo. App. 363, 71 Pac. 896; *Brown v. Potter,* 13 Colo. App. 512, 58 Pac. 785.

The judgment is affirmed.

Affirmed.

Decision *en banc.*

Chief Justice White not participating.