No. 22117.

DENVER PLASTICS, INC., A COLORADO CORPORATION *v.* IRVING SNYDER, JACK LEVY AND BEN LEVY.
(416 P.2d 370)

Decided July 11, 1966.

HODGES, SILVERSTEIN and HARRINGTON, THOMAS J. KER-
WIN, RICHARD W. BREITHAUPT, for plaintiff in error.

DICKERSON, MORRISSEY and DWYER, for defendants in
error.

*En Banc.*

PER CURIAM.

IN the trial court, plaintiff in error Denver Plastics,
Inc., sought specific performance of an option to pur-
chase contained in a lease of property owned by de-
fendant in error Irving Snyder. The interests of de-
fendants in error Jack Levy and Ben Levy turn upon
Snyder's rights and obligations.

The parties will be referred to as Denver Plastics,
Snyder and the Levys, respectively.

Snyder and the Levys by answer admitted the execu-
tion of the lease and alleged that the option by its terms
expired on October 1, 1957, and also that Denver Plas-
tics had not at any time prior thereto exercised the
option. They asked for judgment dismissing the com-
plaint. As and for a counterclaim, they alleged that
Denver Plastics exercised an option to renew the lease
for an additional five year period commencing October
1, 1957 and ending October 1, 1962, but that after the
expiration of the lease it remained in possession; that
possession thereafter was as a tenant from month to
month, which tenancy had been terminated as of May
15, 1963. They asked for possession of the premises to-
gether with other relief.

The parties submitted the action to the trial court on
stipulated facts which may be summarized as follows:

On October 1, 1952, Snyder and Denver Plastics en-
tered into a lease agreement prepared by Snyder's then-

attorney on a standard printed business lease form for the term of October 1, 1952 to October 1, 1957. On a separate sheet attached to and made a part of the lease, the following provisions were added:

"IT IS FURTHER EXPRESSLY UNDERSTOOD AND AGREED that upon giving to lessor thirty (30) days written notice prior to the expiration date of this Lease, lessee shall have the right to the new [sic] said Lease for an additional five (5) year period upon the same terms and conditions as herein contained except that the rental shall be Three Hundred Dollars ($300.00) for each month of said extension; *or* the lessee may purchase said property for the sum of Fifty Thousand Dollars ($50,000.00) by making a down payment of not less than Twenty Thousand Dollars ($20,000.00) in cash with the balance payable at the rate of Three Hundred Dollars ($300.00), or more, per month, plus interest at six percent (6%) per annum, payable monthly on the unpaid balance; said balance to be represented by a Promissory Note executed by lessee in favor of lessor, which said Note shall be secured by a Deed of Trust on the hereinabove described premises.

"In the event lessee elects to exercise the above option to purchase, lessor agrees to convey said property by good and sufficient warranty deed, warranting title to said property to be free and clear of all liens and encumbrances, except taxes for all years subsequent to the date of said deed." (Emphasis supplied.)

Denver Plastics entered into possession on October 1, 1952, has remained in possession since that time, and has paid monthly rental.

On August 23, 1957, Denver Plastics notified Snyder by letter of its right to renew and extend the lease for an additional five year period as provided in the lease, which extension would expire on October 1, 1962.

On May 3, 1961, Denver Plastics mailed to Snyder a letter indicating its election to exercise the option to purchase the property which it contended was provided

for in the lease. This letter stated that an examination of the title revealed that it had been conveyed to Jack Levy and Ben Levy by warranty deed dated August 1, 1957. It further called upon Snyder to establish marketable title in himself so that he could convey the property to Denver Plastics.

Snyder rejected this tendered exercise of option and has refused to convey the property.

On April 13, 1963, Snyder served on Denver Plastics a demand in writing calling for surrender of possession of the premises on May 15, 1963.

Denver Plastics' position is that its exercise of the option to purchase was timely and proper and remained alive until October 1, 1962. Snyder and the Levys contend that the option to purchase expired October 1, 1957, and that in 1961 it was too late for Denver Plastics to exercise the option.

The trial court found for Snyder and the Levys and entered judgment for possession against Denver Plastics.

The only issue for our determination is whether, under the stipulated facts, the option to purchase expired on October 1, 1957, or was still in effect on May 3, 1961, when Denver Plastics attempted to exercise it.

Denver Plastics advances several grounds for reversal of the judgment of the trial court. They are as follows:

1. Where a lease provides for extension of the term at the lessee's election an option to purchase contained in the lease is extended if the term of the lease is extended — a principal enunciated in *Roemer v. Sinclair Refining Company*, 151 Colo. 401, 380 P.2d 56. It is said this is particularly so when the lease, as here, states "lessee shall have the right to the new [sic] said lease for an additional 5-year period *upon the same terms and conditions as herein contained.*" (Emphasis supplied.)

2. The exercise of a right to renew does not prohibit the exercise of other rights, namely to exercise the option to purchase.

3. Ambiguities in a contract are to be resolved against

the party who drafted the contract, in this case Snyder's attorney.

4. The word "or" was used only as a connective and not in a restrictive conjunctive sense.

5. Expressio unius est exclusio alterius. Since the draftsman in the renewal option very carefully stated what was really an unnecessary exception, that is "the rental shall be Three hundred dollars ($300.00) for each month of said extension" the inclusion of the reference to the $300 monthly rental excluded any other exceptions in the general statement, "that the renewal for an additional 5-year period would be upon the same terms and conditions as herein contained."

The lease involved in the *Roemer* case, *supra*, contained the following wording:

"It is understood and agreed by and between the parties hereto that in consideration of the premises, Lessors hereby give and grant to Lessee the exclusive option and privilege of purchasing the above described premises and all improvements, buildings, structures, equipment, appliances, furniture, fixtures, unloading rack and unloading facilities for the sum of SIX THOUSAND SIX HUNDRED SEVENTY-THREE AND 80/100 (6673.80) DOLLARS in cash at any time during the term of this lease or *any extension thereof;* * * *" (Emphasis supplied.)

Thereafter the extension contained a provision that the option should remain in full force and effect during the terms *as extended* or any further extensions or renewals thereof. Finally the last extension agreement contains the following phrases:

"All the rest and remaining terms and provisions of said original lease *as extended* shall be and remain in full force and effect except as specifically modified herein." (Emphasis supplied.)

The above provisions of the lease and the extension agreements in the *Roemer* case, *supra,* distinguish the lease in that case from the one in the case at bar.

The other contentions of Denver Plastics are based upon the premise that there is an ambiguity, or we should find an ambiguity, in the portion of the lease quoted.

In 163 A.L.R. at page 712, which discusses this problem, the annotator states the following:

"The question whether an option to purchase contained in a lease can be exercised by a tenant during the term of an extended or renewal lease cannot be answered with a simple yes or no. * * * The one rule upon which there seems to be general agreement, namely, that *the intention of the parties to be gathered from the lease itself is the determining factor,* is not particularly helpful in most of the cases since it is this intention about which the parties usually disagree." (Emphasis supplied.)

If the document in its ordinary sense shows the intention of the parties this is controlling and we need look no farther.

A considered reading of the paragraph in the lease convinces us that the intention of the parties was clearly indicated. The lease provides that the "lessee shall have the right to the new [sic] said lease * * *; or the lessee may purchase said property * * *" for the sum stated. The word "or" following the semicolon in this instance was not used in the conjunctive sense but within its ordinary and common sense meaning to indicate alternative courses of action which might be exercised. The lease gave the lessee the right *either* to renew or to buy, on or before thirty days prior to October 1, 1957. Its choice to renew precluded its right to purchase.

It follows that the rules of construction in cases of ambiguous documents do not apply, and the other arguments of Denver Plastics need not therefore be considered.

The judgment of the trial court was correct and is affirmed.