490 P.2d 711 (1971)
SCHOOL DISTRICT RE-2(J), in the County of Fremont and State of Colorado, Plaintiff in Error,
v.
George PANUCCI and Thelma Panucci, Defendants in Error.
No. 71-261. (Supreme Court No. 24500.)
Colorado Court of Appeals, Div. I.
November 9, 1971.
*712 Witty & Sandell, Jerry Sandell, Salida, for plaintiff in error.
William V. Crossman, Canon City, for defendants in error.
Selected for Official Publication.
PIERCE, Judge.
This case was transferred from the Supreme Court pursuant to statute.
In 1966, defendants in error, plaintiffs below, brought suit against the School District and others to quiet title to lands which had been leased by the School District's predecessor in 1920 for a term of 99 years for a consideration of $1.00. The lease contained the following clauses:
"* * * said premises being leased for the purpose of enabling the party of the second part to erect thereupon a public school house and appurtenances, and to use the demised premises for such purpose only; the party of the second part to pay all taxes assessed on any of its property situate on said demised premises, and upon the termination of this lease may remove the same.
"The party of the second part shall not * * *, use or permit the premises to be used for any purpose except as a school house, without the written consent of the party of the first part. A violation of any of the covenants herein contained shall result in a forfeiture of this lease at the option of the party of the first part * * *."
After execution of the lease, the predecessor of the School District constructed an elementary school building and appurtenances on the land. Classes were taught in the building until 1963. In 1960 or 1961, pursuant to a reorganization, the present district's predecessor was absorbed into a larger district and a new elementary school building was erected on another site. Thereafter, until notice of termination or forfeiture was served by plaintiffs, the building in question was boarded up. There is considerable dispute in the record as to its use during the three years from the time it was boarded up until the filing of this complaint. The School District maintained there was a constant and continuous use for storage purposes, but the court found, upon proper evidence, that any storage use after 1963 was only incidental and that the old building was "no *713 longer of any use to the District for public instruction and was not of any importance for any purpose." The court further found, from the wording of the lease itself, that the parties intended that when a grade school was no longer needed at this particular site the plaintiffs would again have the use and benefit of their property.
Prior to submitting the case to the trial judge, the parties stipulated, among other things, the following:
"The sole issue remaining to be determined in this matter is whether or not defendant, School District RE-2(J) has abandoned or forfeited their lease."
Applying the doctrine of "frustrated purpose," the trial court quieted title in the plaintiffs as against the School District.
The School District complains that the stipulated issue did not contemplate the application of the doctrine of "frustrated purpose," and that, in any event, the use of the building for storage, even if only incidental, sustained the purpose of the lease in that the term "school house" should be interpreted broadly enough to include any school purpose. As authority for their theory, they rely principally upon Beck v. Giordano, 144 Colo. 372, 356 P.2d 264 and Murphy v. Traynor, 110 Colo. 466, 135 P. 2d 230. They argue that these cases would prohibit forfeiture under the facts before us and, where the evidence does not support a finding of total abandonment, the trial court should not have decreed the termination of this lease.
We agree with their contention that there was no abandonment. Abandonment can be found only where there has been proved a clear intent to abandon, and this intent cannot be presumed from or proved solely by the fact of nonuse for a period less that that set by the statute of limitations. Alamosa Creek Canal Co. v. Nelson, 42 Colo. 140, 93 P. 1112; Board of County Commissioners v. Blanning, 29 Colo.App. ___, 479 P.2d 404.
We do not agree, however, that Beck v. Giordano, supra, and Murphy v. Traynor, supra, would prohibit forfeiture under the facts before us. Both cases involved commercial leases in respect of which a clear policy rationale demands strict construction of forfeiture clauses. In a commercial setting, it is basically unfair to deprive the lessee of a considerable investment in the premises by insignificant technicalities regarding use. This is particularly true where the document being interpreted and the surrounding facts clearly indicate that the use provision was only a minor incident to the original bargain and the obvious incentive to lease was the receipt of rentals. This policy consideration is clearly discussed in Beck, where the court stated:
"The act of defendant in permitting her son and another boy to operate a fireworks stand on the restaurant property for twenty days during one year out of five was not sufficiently grave to authorize a termination of the lease. In this particular case no additional fire hazard was created, no other tenants were molested, and no insurance was canceled because of her acts. To terminate the lease would terminate a restaurant business in which the defendant had invested thousands of dollars and nearly five years of her time,a business which she had reason to expect to continue for another five or more years."
The instrument to be interpreted and the facts incidental thereto are far different in the case before us. This was, for all practical purposes, a gift lease. A valuable piece of real estate was given to the school board for the clear purpose that a building be erected to provide classroom space for children in the area.
In determining whether the conditions for termination are present, we must look to the plain meaning of the words of the document in the ordinary sense. Denver Plastics, Inc. v. Snyder, 160 Colo. 232, 416 P.2d 370. As defined in Webster's Third New International Dictionary, Unabridged, a "schoolhouse" is a building used as a school and particularly an elementary *714 school. In the lease, the clear statement, "to erect thereupon a public school house and appurtenances, and to use the demised premises for such purpose only; the party of the second part * * * use or permit the premises to be used for any purpose except as a school house" [emphasis supplied], gives no indication that an incidental use of the building for storage only would fulfill the purpose requirement intended or contemplated by the parties. See Denver Plastics, Inc. v. Snyder, supra.
While the trial court's application of the doctrine of "frustrated purpose" may not be technically correct in this case, since the cessation of purpose was attributable to a deliberate decision of the School District rather than an independent cause, see 6 A. Corbin, Contracts § 1353, it is clear from the wording of the lease itself and the specific findings of the trial court that plaintiffs were entitled to have the title to the property quieted in their names. See Lawyers Title Insurance Corp. v. Frieder, 147 Colo. 44, 362 P.2d 555.
Whether the lease is viewed as an estate for years subject to a condition subsequent under property law (Restatement of Property § 24) or approached under contract law (White v. Watkins, 385 S.W. 2d 267 (Tex.Civ.App.); Annot., 21 A.L.R. 3rd 534; Bennett, The Modern Lease, 16 Tex.L.Rev. 47; 2 R. Powell, Real Property § 221), plaintiffs had the power of termination after a forfeiture upon giving proper notice.
Although forfeitures are not looked upon with favor, where the default is clearly established under express forfeiture provisions in the lease, lessors are permitted to exercise their power of termination. Union Oil Co. v. Lindauer, 131 Colo. 138, 280 P.2d 444; Merkowitz v. Mahoney, 121 Colo. 38, 215 P.2d 317.
Judgment affirmed.
DWYER and DUFFORD, JJ., concur.