EDLEN COMPANY, a Colorado corporation, now known as Gordon Neon Company, a Colorado corporation, Plaintiff-Appellee,

v.

NASHVILLE MANAGEMENT, INC., a corporation, and John King, Defendants-Appellants.

No. 82CA1478.

Colorado Court of Appeals, Div. II.

Feb. 16, 1984.

Rehearing Denied March 15, 1984.

Charles A. Bewley, Denver, for plaintiff-appellee.

Levi Martinez, Denver, for defendants-appellants.

BERMAN, Judge.

Edlen Co., n/k/a Gordon Neon Co. (lessor), commenced this unlawful detainer action against Nashville Management, Inc., and John King (lessees). *See* § 13–40–101, et seq., C.R.S. (1983 Cum.Supp.). Lessees appeal from an adverse judgment finding them in breach of the lease and awarding possession of the leased premises to lessor. We affirm.

Lessor owns certain premises on East Colfax in Denver. On February 26, 1973, lessor entered into a ten year lease with Dewey Dutton, d/b/a Dutton's Drive Inns, Inc. The lease provided, in pertinent part:

"[T]he demised premises shall be used as a restaurant, lounge, and food drive-in

establishment .... Other types of activities which the Lessee may conduct in the premises from time to time shall not constitute a default under the terms of this Lease, provided (1) such activity shall not operate to provent (sic) the maintenance of insurance on the building and improvements, and (2) the Lessee shall pay, upon demand, all increased insurance premiums [resulting from conducting such activity], and the use shall not be of such a character so that the demised premises shall be put to a harder use than that contemplated by the parties at this time."

The lease also provided for a base monthly rent with additional rent in the amount by which eight percent of all gross food sales plus ten percent of all gross liquor sales exceeded the base rent.

After intervening assignments of the lease to Dutton's son and Dutton's wife, and a period when one Evo Mini operated the premises under Dutton's lease, Dutton assigned the lease in November 1978, with lessor's consent, to Nashville Management, Inc., whose principals at the time were Lanny Venard and Patricia White. Defendant King acquired full control of Nashville Management in May 1981.

In December 1981, lessor sent lessees a notice of default and termination of lease because $6,750 in rent was past due. However, according to the trial court's findings, this default was timely cured. On July 12, 1982, lessees sent a letter to lessor listing monthly liquor sales for the preceding year and the letter stated that there was no restaurant in operation. On July 26, lessor sent lessees a notice of default for failure to operate a restaurant on the premises as required by the lease and gave lessees 15 days to remedy the default. When the default was not remedied, lessor sent a notice terminating the lease and commenced the instant action.

At trial, the parties stipulated that except for selling potato chips and warmed sausages and serving a brunch on Sundays, the premises were not operated as a restaurant. Instead, the premises were operated as a tavern and cabaret with dancing. Based on a finding that no restaurant was being operated on the premises, the court found that lessees had breached the lease, that their continued possession constituted an unlawful detainer, and that lessor was entitled to possession of the premises.

### I.

██ On appeal, lessees first contend that they did not breach the lease because the use provision was amended to provide that the premises *"may* be used as a restaurant, lounge, food drive-in and night club establishment." We find no merit to this contention.

In support of their contention, lessees rely on an agreement between Dutton and one Larry Hovatter for the sale of Dutton's business and his rights under the lease, which agreement was attached to lessor's pleadings. The quoted language appeared in a provision which stated that the agreement was contingent upon Hovatter being able to enter into a lease with lessor which would provide, *inter alia*, that the premises may be used for the aforementioned purposes. However, although lessor approved the terms of the sale agreement, the sale was not consummated and Hovatter did not enter into a lease with lessor. Accordingly, contrary to lessees' contention, the lease was not amended.

### II.

██ Lessees next contend that they did not breach the lease because the lease permitted other uses, and use of the premises as a restaurant was a permitted use, not a restrictive use. We disagree.

While the lease provided that conducting other types of activities "from time to time" would not necessarily constitute a default, it also provided that the premises "shall" be used as a restaurant. The word "shall" generally connotes an imperative or

mandatory requirement. *See Black's Law Dictionary* at 1541 (revised 4th ed.); *cf. Swift v. Smith,* 119 Colo. 126, 201 P.2d 609 (1948) ("shall," in statute, presumed mandatory).

Moreover, while a lessee will be entitled to carry on those activities usually connected with the business prescribed in a use provision, here a restaurant, "he certainly will not be authorized to conduct an entirely different business." Annot., 148 A.L.R. 583 at 595. That the lease mandatorily required operation of a restaurant here, and that such was the intent of the original signatories to the lease, *see Denver Plastics, Inc. v. Snyder,* 160 Colo. 232, 416 P.2d 370 (1966), is supported by the fact that the rent was, in part, tied to the amount of food sales.

Contrary to lessees' assertion, *Beck v. Giordano,* 144 Colo. 372, 356 P.2d 264 (1960) is not controlling here. In *Beck,* the lease provided that the lessee was "[t]o occupy the [premises] as a restaurant." The court had to determine whether the lease could be terminated because, in addition to operating a restaurant, the lessee permitted operation of a fireworks stand on the premises for twenty days. Noting that allowing termination of the lease would result in an unjust forfeiture under the circumstances, the court held that because no other words of limitation were used in the lease specifically prohibiting other activities, the use provision was permissive, rather than restrictive, and that allowing operation of a fireworks stand for a short period of time was not sufficiently grave to justify termination of the lease.

Here, in contrast to *Beck,* lessees were not engaged in a use of the premises *in addition* to the use prescribed in the lease. Rather, lessees failed to put the premises to the required use and, thus, were in breach of a mandatory and significant provision of the lease. *See School District RE–2(J) v. Panucci,* 30 Colo.App. 184, 490 P.2d 711 (1971).

### III.

Lessees also contend that lessor waived the restaurant use provision. They assert that lessor knew that no restaurant was being operated because all the restaurant equipment had been removed prior to King's tenancy and because lessees' rent payments did not include a percentage of food sales. We find no merit in this contention.

■ Initially, we note that the failure of the rent payments to include a percentage of food sales does not necessarily mean that no restaurant was being operated since additional rent beyond the base rent was payable only when a certain percentage of food and liquor sales exceeded the base rent. Hence, even had a restaurant been in operation, sales might not have been high enough to require payment of additional rent.

With regard to the removal of restaurant equipment, King testified that there was no equipment on the premises when he took control of Nashville Management. Lessees also rely on certain testimony of Dewey Dutton that "the restaurant was stripped of quite a [bit] of equipment" during his tenure as lessee. However, Dutton further testified:

> "But when Evo Mini took over, there was still restaurant equipment in there that he was able to use, and operate as a food establishment, and that's the last I am aware of it."

Moreover, both of lessor's principals testified that until they received King's July 1982 letter they did not know that no restaurant was being operated on the premises.

Although the trial court's oral findings at the conclusion of trial do not specifically address the waiver issue, the issue and argument in support thereof were clearly raised in lessees' new trial motion, which was denied. Implicit in this denial is a finding that lessor had not waived the restaurant use provision. The evidence here supports a finding that lessor did not intentionally and voluntarily abandon a known right. *See Gulf Insurance Co. v. State,* 43

Colo.App. 360, 607 P.2d 1016 (1979). Thus, the court's finding that lessor did not waive the restaurant use provision is binding on appeal. *Linley v. Hanson*, 173 Colo. 239, 477 P.2d 453 (1970).

## IV.

Finally, lessees concede in their briefs on appeal that if we affirm the judgment the trial court properly dismissed their counterclaims.

Judgment affirmed.

KELLY and BABCOCK, JJ., concur.